1

2

3

4

5                                                           **E-FILED on** ___9/30/05___

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                       SAN JOSE DIVISION

11

12   QUEDILLIS RICARDO WALKER,                    No. C-04-02211 RMW
     MYRTLE VIVIAN WALKER, and
13   WILLIAM BERKELEY WALKER,                      ORDER GRANTING IN PART AND
                                                   DENYING IN PART DEFENDANTS'
14                Plaintiffs,                       MOTIONS TO DISMISS

15         v.                                      **[Re Docket Nos. 11, 15]**

16   COUNTY OF SANTA CLARA, GERALD
     EGGE, GAIL LEWIS, EARL PENNINGTON,
17   JOHN SCHON, RANDY DANTO, and DOES
     1 to 100,
18
                 Defendants.
19

20        Defendants County of Santa Clara ("County"), Gerald Egge ("Egge"), Gail Lewis ("Lewis"), Earl

21   Pennington ("Pennington"), John Schon ("Schon") and Randy Danto ("Danto") filed motions  to dismiss the

22   County and Danto from the complaint.  Plaintiffs Quedillis Ricardo Walker ("Walker"), Myrtle Vivian

23   Walker, and William Berkeley Walker oppose the motion.  The court has reviewed the papers and

24   considered the arguments of counsel.  For the reasons discussed below, the court grants in part and denies

25   in part defendants' motions to dismiss as follows:  plaintiffs' *Monell* claims against the County based on the

26   actions of the district attorney, the sheriff and his deputies, and the Conflicts Administration Program are

27   dismissed because they are state officials;  defendants' motion to dismiss plaintiffs' *Monell* claims against the

28

County based on the actions of Public Defender Danto is denied to the extent that Danto was not a state official, but is granted to the extent such claims are based on Danto's failure to disclose the plea agreement, which is barred by collateral estoppel; plaintiffs' claims against the sheriff and district attorney are barred by Eleventh Amendment sovereign immunity; plaintiffs' claims against the Public Defender's Office and Conflicts Administration Program are dismissed for failure to state a claim; plaintiffs' state claim for damages under Article 1, Section 15 is dismissed because plaintiffs do not contest that there is no indication that damages are provided for under Article 1, Section 15; defendants' motion to dismiss plaintiffs' Bane Act claim against the County is denied as to Walker, but granted as to Myrtle Walker and William Walker; plaintiffs' claims against the County based on negligent supervision and hiring are dismissed; plaintiffs' claims against Danto, to the extent they are based on her failure to disclose the plea agreement, are barred by collateral estoppel and alternatively for failure to state a claim; defendants' motion to dismiss plaintiffs' Bane Act claim against Danto is granted; defendants' motion to dismiss claims against Danto based on sections 821.6 and 820.2 is denied; defendants' motion to dismiss plaintiffs' claims against Danto based on the litigation privilege is granted; and plaintiffs are granted thirty days leave to amend.

## I.  BACKGROUND

On January 10, 1991 34-year-old Lisa Hopewell, Walker's ex-girlfriend, was found murdered in her apartment with her head wrapped in duct tape, her throat slit and her vaginal area stabbed.  The cause of death was asphyxia.   There was evidence that someone had been drinking champagne, and also evidence of crack cocaine use.  The tip of one finger of an Isotoner glove was found stuck to a piece of duct tape, there were several cigarette butts near the body, and surfaces that might have carried fingerprints appeared to have been wiped clean.  Plaintiff Walker and Rahsson Bowers were tried for Hopewell's murder.  Bowers' fingerprints were found on the duct tape, but there was no physical evidence linking Walker to the crime.  Bowers had previously admitted to dealing crack cocaine, and was Hopewell's primary drug supplier.  FAC ¶ 35.  Subsequent investigation revealed that Hopewell's arms and legs, and every identifiable print from the duct tape, matched the recorded fingerprints of Bowers.

### A.      Investigation and witness interviews

Bowers was arrested on March 7, 1991 and interrogated by Deputy Sheriffs Egge, Lewis and Pennington ("Sheriffs").  Bowers initially denied involvement in the crime until the Sheriffs threatened him

1   with the death penalty.  First Am. Compl. ("FAC") ¶ 34.  After being shown a series of photographs,

2   including Walker's, Bowers identified "two white guys" and Walker in the crime.  After failing a polygraph

3   test, Bowers omitted the "two white guys" but still implicated Walker after encouragement from the Sheriffs.

4   After implicating Walker without the "two white guys," the Sheriffs did not administer a second polygraph

5   test on Bowers.  FAC ¶ 34.

6          As part of the investigation, the Sheriffs and deputy district attorney John Schon went to the county

7   jail to interview Sarah Dunbar.  FAC ¶ 40.  Plaintiffs allege that Dunbar was susceptible to being

8   manipulated because she was awaiting trial on a drug charge, and in exchange for a lesser sentence,

9   testified falsely that Walker had a propensity for violence, that he threatened to hurt her if she testified, and

10  that Walker wore gloves similar to the Isotoner gloves found at the murder scene.  Walker and his attorney

11  were not informed of Dunbar's interview or any deal with Dunbar, and Dunbar recanted her testimony after

12  trial.  FAC ¶ 40.

13         The Sheriffs also interviewed Jacqueline Miller, who had apparently spent the night with Walker at

14  the time of the murder.  Plaintiffs allege that the Sheriffs played on Miller's vulnerability – that she was

15  married and spending the night with Walker, who was not her husband – in order to "trick" Miller into

16  saying that she had spent only part of the night with Walker.  Although she subsequently stated that she

17  spent the entire night with him, her initial statements to the Sheriffs were used to impeach her testimony at

18  trial.  FAC ¶ 41.

19         **B.     Alleged suppression of evidence**

20         Assistant Public Defender Randy Danto was assigned to defend Bowers.  As the Office of the

21  Public Defender could not represent Walker due to a potential conflict with Bowers, Walker was

22  represented by James Mantell, a private attorney appointed through the County's Conflicts Administration

23  Panel.  FAC ¶¶ 42-43.

24         The day before the trial, Bowers wrote a letter to Deputy Sheriff Egge, accusing Egge of reneging

25  on a plea agreement, and expressing fear that he would be subject to the death penalty.  FAC ¶ 44.

26  Bowers signed the letter in his own blood.  This letter, which plaintiffs allege was critical to impeachment of

27  Bowers' testimony at trial, was never disclosed or produced to Walker's defense counsel.  FAC ¶ 45.

28

**C.     Undisclosed plea agreement and plea agreement negotiations**

Plaintiffs allege that Bowers' counsel Danto had multiple conversations with Schon prior to trial in an attempt to secure a plea bargain.  These conversations were not revealed to Walker or his attorney.  FAC ¶ 46.  Just after the commencement of trial, Schon agreed to a plea agreement with Bowers: Bowers would be allowed to plead to second degree murder in exchange for testifying against Walker.  FAC ¶ 47.  Plaintiffs allege that Danto and Schon agreed not to reveal the plea agreement to anyone else, including the court, until the state concluded its case against Walker.  FAC ¶ 48.

By not revealing the plea agreement, Bowers was allowed to remain in the courtroom throughout the other witness testimony.  Plaintiffs allege that this was improper, as Bowers became a state witness, and was no longer an actual defendant at that point.  FAC ¶ 49.  At trial, Danto made numerous arguments to the jury in support of Bowers' coercion defense.  Danto asserted that Walker had a record of and reputation for extreme violence, that Walker threatened Bowers and his family, and that other witnesses were afraid of Walker.  *Id.*  Plaintiffs argue that none of Danto's arguments would have been allowed had the plea agreement been revealed.[1]

**D.     Verdict and post-trial events**

Walker was convicted of first degree murder and sentenced to a term of 26 years to life in prison.  During his time in prison, multiple witnesses testified that another individual, Mark Swanson, was Bowers' accomplice, and subsequent tests on cigarette butts left at the crime scene matched saliva fragments with blood taken from Swanson.  FAC ¶ 53.  A history of Walker's various appeals and petitions for writs of habeas corpus in the state and federal courts is discussed in more detail in the court's discussion on collateral estoppel below.  Walker spent 12 years in prison before a writ of habeas corpus was issued on June 20, 2003.

---

[1]     It also appears that Dunbar testified regarding Walker's propensity for violence.  Def.'s Req. J. Notice Ex. D at 30-31.  Plaintiffs also argue that Mantell was ineffective as counsel, but do not provide any specific allegations in support.  FAC ¶ 51.  Defendants' Request for Judicial Notice of Exhibits A-H is granted, not for the truth of the facts recited therein, but for the existence of the documents themselves, because there is no reasonable dispute over their authenticity.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (citing *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999)).

1

## II.  ANALYSIS

2

A.      *Monell* **claims against the County under Section 1983**

3        State officials are not subject to suit under section 1983 because they are not persons within the

4 meaning of the statute.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).  "Obviously,

5 state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit

6 against the official but rather is a suit against the official's office."  *Will*, 491 U.S. at 71 (citations omitted).

7 "As such, it is no different from a suit against the State itself. " *Id.* (citations omitted).  On the other hand,

8 "[p]ursuant to 42 U.S.C. § 1983, a local government may be liable for constitutional torts committed by its

9 officials according to municipal policy, practice, or custom." *Weiner v. San Diego County*, 210 F.3d

10 1025, 1028 (9th Cir. 2000) (citing  *Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91

11 (1978)).  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its

12 employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its

13 lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury

14 that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

15        Thus, the question initially turns on whether the official is a representative of the County or a

16 representative of the State.  In answering this question, the official's function in a particular area, "as defined

17 by state law, must be evaluated to determine whether he acts for the state or the county."  *Weiner*, 210

18 F.3d at 1028 (citing *McMillian v. Monroe County Alabama*, 520 U.S. 781, 786 (1997)).

19

### 1.      Section 1983 claim based on conduct of district attorney

20        Walker does not bring a claim based on the District Attorney's decision to prosecute.  Rather,

21 plaintiffs' section 1983 claim argues that the District Attorney is subject to *Monell* liability based on two

22 theories: (1) customs and policies of the District Attorney that plaintiff alleges violate the constitutional rights

23 of criminal suspects and defendants; and (2) delegating final policy making authority to Schon, or ratifying

24 his conduct.  Defendants counter that Schon is not a "person" for purposes of section 1983 liability because

25 he was prosecuting crimes against Walker.

26        In *Pitts v. County of Kern*, plaintiffs were individuals whose convictions for child molestation were

27 reversed on appeal due to prosecutorial misconduct.  17 Cal. 4th 340, 345 (1998).  Plaintiffs subsequently

28 brought a section 1983 suit against, *inter alia*, the County of Kern for employing the deputy district

attorney and chief prosecutor.  After conducting a detailed analysis, the California Supreme Court

concluded that a district attorney represents the state when preparing to prosecute and when prosecuting

criminal violations of state law.  *Id.* at 356-62.  The California Supreme Court went on to find that there

was no reasonable distinction between a district attorney's actions when prosecuting violations of state law,

and the district attorney's training and developing policy in these areas.  Thus, a district attorney also

represents the state when training and developing policies related to prosecuting violations of state law.  *See*

*id.* at 362-63; *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 832-33 (2004);  *see also Weiner*,

210 F.3d at 1030 (county district attorney acts as state official when deciding whether to prosecute an

individual); *accord Brewster v. Shasta County*, 275 F.3d 803, 810 (9th Cir. 2001).

Similarly, here the court is satisfied that when establishing customs and policies related to

prosecuting individuals for violations of state law, the district attorney and deputy district attorney Schon

were both acting as state officials, and the County is therefore not subject to liability under section 1983 for

their actions.

### 2.      Section 1983 claim based on conduct of sheriffs

Plaintiffs contend that the Ninth Circuit's holding in *Brewster v. Shasta County* controls, and

therefore that the sheriff, when investigating crime, acts as a final policymaker for the County when

investigating crime within the County.  275 F.3d 803, 812 (9th Cir. 2001).  Defendants counter that

*Venegas v. County of Los Angeles* is controlling.  32 Cal. 4th 820 (2004).  In *Venegas*, the California

Supreme Court expressly disagreed with the Ninth Circuit's decision in *Brewster*, and held that "California

sheriffs act as state officers while performing state law enforcement duties such as investigating possible

criminal activity."  *Id.* 839.  Thus, there appears to be a split of authority.

In *Miller v. Gammie*, the Ninth Circuit reversed a blanket absolute immunity rule for social

workers established by *Babcock v. Tyler*, 884 F.2d 497 (9th Cir. 1989), in light of a more functional

approach to immunity taken by the Supreme Court in two subsequent decisions, *Antoine v. Byers &*

*Anderson, Inc.*, 508 U.S. 429 (1991), and *Kalina v. Fletcher*, 522 U.S. 117 (1997).  *See* 335 F.3d

889, 896-99 (9th Cir. 2003).  The *Miller* court went on to address "when, if ever, a district court or a

three-judge panel is free to reexamine the holding of a prior panel in light of an inconsistent decision by a

court of last resort on a closely related, but not identical issue."  *Id.* at 899.  The Ninth Circuit concluded

1   that "the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit

2   precedent in such a way that the cases are clearly irreconcilable." *Id.* at 900.  In light of the subsequent

3   Supreme Court decisions, the Ninth Circuit affirmed the district court's deferred ruling on a motion to

4   dismiss, and refusal to apply the *Babcock* decision, until the nature of the functions the defendant performed

5   were sufficiently outlined to apply *Antoine* and *Kalina.  See id.*  Here, the Ninth Circuit's decision in

6   *Brewster* is directly at odds with the California Supreme Court's subsequent holding in *Venegas* that

7   California sheriffs are state officers while performing law enforcement duties, and although this court need

8   not "blindly accept" the *Venegas* court's decision, *see Weiner*, 210 F.3d at 1029, the California Supreme

9   Court's decision comports with this court's understanding of the function of California sheriffs.  *See*

10  *Venegas*, 32 Cal. 4th at 839; *Miller*, 335 F.3d at 900;  *Weiner*, 210 F.3d at 1028-29 ("The California

11  Supreme Court is the ultimate interpreter of California state law.").

### 3.     Section 1983 claim based on conduct of public defender

13          Defendants argue that the County has no *Monell* liability for Danto's actions, because she did not

14  act under color of state law.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public

15  defender does not act under color of state law when performing a lawyer's traditional functions as counsel

16  to a defendant in a criminal proceeding.").  Plaintiffs counter that the County is liable for Danto's actions

17  because they were based on a conspiracy with Deputy District Attorney Schon, and Danto acted as a

18  "quasi-prosecutor" against Walker when purportedly defending Bowers.  Opp. at 14-15.

19          Defendants are correct that generally public defenders are private individuals for purposes of

20  section 1983, and thus do not act under color of state law. *See Polk County*, 454 U.S. at 325.  A private

21  attorney, even if appointed and paid for by the state, is not acting under color of state law when performing

22  his functions as counsel.  *Id.*  However, an otherwise private individual may act under color of state law by

23  engaging in a conspiracy with state officials to deprive another of federal rights.  *See Tower v. Glover*, 467

24  U.S. 914, 923 (1983).  Plaintiffs' claim appears to be that Danto acted under color of state law by agreeing

25  with Deputy Attorney Schon to bring in character evidence about Walker's purported violent behavior, in

26  purported defense of Bowers, that Schon could not bring in himself.  At the same time, Danto failed to

27  reveal that she had reached a plea agreement with Schon regarding her client Bowers, thus purportedly

28  violating Walker's due process and equal protection rights and rendering Danto an individual acting under

color of state law for purposes of section 1983. *See Tower*, 467 U.S. at 923. Defendants' argument on reply remains unclear. Notably, as discussed below, plaintiffs' claims against Danto based on the plea agreement are dismissed on the alternative grounds of collateral estoppel.

Plaintiffs also allege that Danto's actions were administrative actions beyond the actual representation of her client, and therefore subjects the public defender offices to suit under section 1983 for failing to train their attorney "in proper and ethical litigation practices." Opp. at 14. In *Miranda v. Clark County*, upon which plaintiffs rely, the complaint alleged that the county defendant "had a policy of assigning the least-experienced attorneys to capital cases without providing any training, thus demonstrating callous indifference to the defendant's constitutional rights." 319 F.3d at 471. The complaint further alleged that this practice was not one isolated incident, but "a deliberate pattern and policy of refusing to train lawyers for capital cases known to the county administrators to exert unusual demands on attorneys." *Id.* The Ninth Circuit, on rehearing *en banc*, held that these allegations were sufficient to create a claim of "deliberate indifference to constitutional rights" for failing to train lawyers to represent clients accused of capital crimes. *Id.* Here, plaintiffs do not adequately allege a basis for concluding that Danto's actions, taken as true, indicate a County policy of deliberate indifference to the constitutional rights of criminal defendants generally.

### 4.    Section 1983 claims based on Conflicts Administration Program

Plaintiffs argue that the Conflicts Administration Program is subject to *Monell* liability for Mantell's purported ineffective assistance of counsel. Defendants counter that, because the Conflicts Administration Program and Conflicts Counsel are not County agencies, the County cannot set policy for an entity it does not control and therefore cannot be liable under section 1983. In contrast to the allegations that Danto conspired with Deputy District Attorney Schon to violate Walker's constitutional rights, plaintiffs do not allege that Mantell or the Conflicts Administration Program participated in such a conspiracy. In addition, plaintiffs' allegations are insufficient to establish that Mantell rendered ineffective assistance of counsel, or that he was improperly selected. As discussed below, it appears that Mantell performed at least adequately in representing Walker. Plaintiffs' argument that the Ninth Circuit's holding in *Miranda* establishes a basis for bringing a claim against the Conflicts Administration Program is not convincing. *See* Opp. at 16 (citing *Miranda*, 319 F.3d at 468-70). Accordingly, plaintiffs' claim against the County based

1    on the Conflicts Administration Program's selection of Mantell as Walker's trial counsel is properly

2    dismissed.  *See Polk*, 454 U.S. at 324-25.

3        **B.      Eleventh Amendment immunity for claims against the District Attorney and Sheriff**

4            The Eleventh Amendment bars from the federal courts suits against a state by its own citizens,

5    citizens of another state or citizens or subjects of any foreign state.  *See Atascadero State Hosp. v.*

6    *Scanlon*, 473 U.S. 234, 241 (1985).  Unless a state has waived its Eleventh Amendment immunity or

7    Congress has overridden it, a state cannot be sued regardless of the relief sought.  *See Kentucky v.*

8    *Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978));

9    *Confederated Tribes & Bands v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999).  This Eleventh Amendment

10   immunity also extends to suits against a state agency, *see, e.g., Simmons v. Sacramento County Superior*

11   *Court*, 318 F.3d 1156,1161 (9th Cir. 2003) (Eleventh Amendment bars suit against state superior court

12   and its employees), and to state officials sued in their official capacities, *see Kentucky*, 472 U.S. at

13   169-70.  The parties essentially reiterate their *Monell* arguments.  As the sheriff and district attorney are

14   both held to be state actors, they are entitled to sovereign immunity under the Eleventh Amendment.  *See*

15   *McMillian v. Monroe County*, 520 U.S. 781, 786-93 (1997) (county sheriff cannot be sued for damages

16   under § 1983 where survey of state law reveals sheriff represents the State, not the county, in official

17   policymaking capacity).

18       **C.      Claims against the Public Defender and Conflicts Administration Program**

19           Given that Danto and Mantell, in defending their respective clients Bowers and Walker, were not

20   acting under color of state law, defendants argue that their respective supervising agencies, the public

21   defender and Conflicts Administration Program, also cannot be held liable for counsels' actions.  Plaintiffs

22   argue that under *Miranda*, liability against the county may attach even when the individual public defender

23   is not deemed to be acting under color of state law.  Opp. at 17 (citing *Miranda*, 319 F.3d at 468-69).  In

24   *Miranda*, the Ninth Circuit found that the Nevada County Public Defender could be held liable as the

25   administrative head for instituting office-wide policies that allocated resources to capital defendants based

26   on whether they passed a polygraph test, providing defendants who passed the polygraph test with more

27   experienced attorneys.  *Miranda*, 319 F.3d at 469-471.  Plaintiffs allege no such policy on the part of the

28   public defender or Conflicts Administration Program here.  Thus, even assuming that liability may attach

against the County when the individuals are not subject to suit, plaintiffs fail to state a claim under *Miranda*.

**D.     State claims**

**1.     Article I Section 15 of the California Constitution**

Defendants argue that Article I, Section 15 of the California Constitution does not provide an independent right to sue for damages.  Article I, Section 15 of the California Constitution states in part:

> The defendant in a criminal cause has the right to a speedy public trial, to compel attendance of witnesses in the defendant's behalf, to have the assistance of counsel for the defendant's defense, to be personally present with counsel, and to be confronted with the witnesses against the defendant. The Legislature may provide for the deposition of a witness in the presence of the defendant and the defendant's counsel.

CAL. CONST. art. I, § 15.

For purposes of analysis, the court assumes that plaintiffs have adequately stated a cause of action under Article I, Section 15.  *See Degrassi v. Cook*, 29 Cal. 4th 333, 338 (2002); *Katzberg v. Regents Univ. Calif.*, 29 Cal. 4th 300, 307 (2002).  There is no dispute that Article I, Section 15 is "self-executing" in that all branches of government must comply with its terms, and that this section supports an action brought by a private plaintiff for declaratory relief or for an injunction. *Degrassi*, 29 Cal. 4th at 338 (Article I, Section 2(a) free speech clause self-executing); *Katzberg*, 29 Cal. 4th at 307.  The question here, as in *Degrassi* and *Katzberg*, is whether money damages are available.  *See id.*  As an initial matter, the language of Article I, Section 15 does not "speak to manifest any intent to include a damages remedy for a violation of the provision." *Degrassi*, 29 Cal. 4th at 338 (citing *Katzberg*, 29 Cal. 4th at 317-18). Defendants further contend that Walker has adequately exercised his Article I, Section 15 rights through the writ of habeas corpus process and through his claims under the Bane Act.  Plaintiffs counter in two sentences that defendants have failed to address the history of Article I, Section 15 in support of their motion to dismiss.  As plaintiffs do not contest that Article I, Section 15 does not manifest an intent to include a damages remedy, and also do not contest that there are adequate alternative forms of relief, their claims for damages under Article I, Section 15 are properly dismissed.

1

2.     **Bane Act**

2

a.     **Quedillis Walker**

3      California Civil Code § 52.1 authorizes a cause of action against any person who, "whether or not

4  acting under color of law, interferes . . . or attempts to interfere by threats, intimidation, or coercion, with

5  the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of

6  the United States, or of the rights secured by the Constitution or laws of this state." CAL. CIV. CODE §

7  52.1(a).  Under section 52.1(b), "[a]ny individual whose exercise or enjoyment of rights secured by the

8  Constitution or laws of the United States . . . has been interfered with, or attempted to be interfered with . .

9  . as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own

10  behalf a civil action for damages . . . ." CAL. CIV. CODE § 52.1(b).

11     The California Court of Appeal held in *Boccato v. City of Hermosa Beach*, 29 Cal. App. 4th

12  1797, 1809 (1994), that a person who brings an action under section 52.1 must be a member of one of the

13  classes protected by Civil Code section 51.7, and that a plaintiff under section 52.1 must also allege

14  discriminatory animus or intent.  Both parties agree that this interpretation of the statute has been specifically

15  overruled by legislative action.  2000 CAL. STAT. 98 § 1 (Assemb. B. 2719); *see Venegas*, 32 Cal. 4th at

16  842.  Thus, a plaintiff "need not allege that defendants acted with discriminatory animus or intent, so long as

17  those acts were accompanied by the requisite threats, intimidation, or coercion." *Venegas*, 32 Cal. 4th at

18  843.

19     Defendants submit that, as the allegations relate to intimidation and coercion of witnesses who

20  testified against Walker at trial, and not allegations that Walker was personally subject to intimidation and

21  coercion directly, plaintiffs fail to state a claim.  As the argument goes, defendants are liable under section

22  52.1 when they attempt to interfere with a plaintiff's constitutional or statutory rights by making direct

23  threats against the plaintiff, but when defendants attempt to interfere with a plaintiff's constitutional or

24  statutory rights by making threats against third parties, section 52.1 liability is unavailable.  This argument

25  does not appear to be supported by the case law or legislative history.

26

27

28

1

**b.     Myrtle and William Walker**

2       Defendants contend that the language "in his or her own name and on his or her own behalf"

3  requires that a Bane Act plaintiff be the person whose rights were violated, in this case Quedillis Walker,

4  and that there is no derivative liability cognizable under the Bane Act.  CAL. CIV. CODE § 52.1(b).  Several

5  cases prior to *Venegas* held that there is no derivative liability under section 52.1 in the context of wrongful

6  death cases.  *See City of Simi Valley v. Superior Court*, 111 Cal. App. 4th 1077, 1085 (2003) ("This

7  statute permits an individual to sue for damages where his or her constitutional rights are violated" and does

8  not permit a wrongful death claim); *Bay Area Rapid Transit Dist. v. Superior Court* ("*BART*"), 38 Cal.

9  App. 4th 141, 144 (1995) ("The Bane Act is simply not a wrongful death provision"); *Gaston v. Colio*,

10 883 F. Supp. 508, 510 (S.D. Cal. 1995) (plaintiffs could not bring a Bane Act claim because they "were

11 not the one whose rights were allegedly violated").

12       Plaintiffs in *BART*, whose child was shot and killed by a BART police officer, brought, *inter alia*, a

13 claim under the Bane Act for his death.  The California Court of Appeal, held that the Bane Act "is limited

14 to plaintiffs who themselves have been the subject of violence or threats."  38 Cal. App. 4th at 145.  The

15 *BART* court went on to note that, "[a]s in the cases of bystander recovery for emotional distress, [citation],

16 one could see the nightmare of trying to determine where the scope and extent of such liability would end.

17 In the absence of a clear legislative intent, we cannot recognize derivative Bane Act liability as requested by

18 [plaintiffs]."  *Id.* at 144-45.  Here, although there is clear legislative intent that section 52.1 does not require

19 a plaintiff to be a member of a protected class or to allege discriminatory animus, there is no indication that

20 the state legislature intended to overrule *BART*'s holding that the Bane Act does not authorize derivative

21 liability, and the plain language of 52.1(b) supports this conclusion.

22       **3.     Public entity liability for negligent hiring, training, and supervision**

23       The parties agree that California Government Code section 815 limits the liability of public entities

24 to statutory claims.[2]  Plaintiffs assert that their negligent hiring, training and supervision claim is properly

25 based on California Government Code section 815.2(a), which "makes a public entity vicariously liable for

26

27       [2]       Section 815 provides that "[e]xcept as otherwise provided by statute, [a] public entity is
   not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public
28 employee . . . ."  CAL. GOV'T CODE § 815(a).

1    its employee's negligent acts or omission within the scope of employment." *Eastburn v. Reg'l Fire*

2    *Protection Auth.*, 31 Cal. 4th 1175, 1184 (2003).  In support, plaintiffs cite *Van Ort v. Estate of*

3    *Stanewich*, which noted in dicta that "it can be argued that the statutory language [of section 815.2(a)]

4    conceivably provides for negligent supervision direct liability for acts employees committed within the scope

5    of their employment."  92 F.3d 831, 840 (9th Cir. 1996).

6         Subsequently in *Eastburn*, the California Supreme Court explained that California Government

7    Code section 815 applies to direct tort liability of public entities, 31 Cal. 4th at 1180, while California

8    Government Code section 815.2(a) "makes a public entity vicariously liable for its employee's negligent acts

9    or omission within the scope of employment." *Id.* at 1184.  "Vicarious liability 'means that the act or

10   omission of one person . . . is imputed by operation of law to another[.]'" *Srithong v. Total Investment*

11   *Co*., 23 Cal. App. 4th 721, 726 (1994) (quoting *Far West Financial Corp. v. Defendant & S Co.*, 46

12   Cal.3d 796, 819 (1988)).  In other words, vicarious liability imposes liability on a party innocent of any

13   personal wrongdoing for the negligence of another.  *See Srithong*, 23 Cal. App. 4th at 727.  Thus,

14   plaintiffs' allegations, which focus on the negligent hiring and supervision by the County, are properly treated

15   as direct liability claims.  *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113 (2004)

16   (negligent hiring and supervision of police claim treated as direct liability claim); *see also Eastburn*, 31 Cal.

17   4th at 1185 (negligent staffing and training claim against 911 company analyzed as direct liability claim).

18        As discussed in *Eastburn*, "direct tort liability of public entities must be based on a specific statute

19   declaring them to be liable, or at least creating some specific duty of care . . . ." *Eastburn*, 31 Cal. 4th at

20   1183.  In *Eastburn*, the court found no direct liability because there was no statutory provision "declaring

21   or defining a public agency's duty of care with respect to handling 911 emergency calls." *Id.* at 1180.  The

22   California Court of Appeal in *Munoz v. City of Union City* applied the same principle.  In *Munoz*,

23   plaintiffs were relatives of a woman shot and killed by police officers, and filed a wrongful death action

24   against the officer and the city.  The decedent was under the influence and brandishing two knives in her

25   home near her family members when she was confronted by police officers called to the scene.  She was

26   shot by a police officer during the officer's attempt to calm her down.  The plaintiffs claimed that the city's

27   inadequate training, and supervision of officers in responding to crisis situations caused the death.  The

28   *Munoz* court held that, as plaintiffs were unable to find a statutory basis for their negligence claim, the

ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS
No. C-04-02211 RMW
TNL                                                                13

1  defendant city was not directly liable for failing to provide clearer police procedures in confrontational

2  situations, more effective officer supervision, or more effective officer training.  120 Cal. App. 4th 1077,

3  1112-13 (2004).  Similarly, here plaintiffs' claims for negligent hiring, supervision and training are not

4  properly based on section 815.2(a).  As plaintiffs have not established an alternative basis for statutory

5  liability against the County, their claims are properly dismissed.

6        **E.**    **Whether collateral estoppel applies to plaintiffs' claims against Danto**

7        Defendants submit that decisions by the California Sixth District Court of Appeal, the California

8  Supreme Court, the U.S. District Court and the Ninth Circuit Court of Appeals collaterally estop plaintiffs

9  from bringing a claim for violation of their Fourteenth Amendment rights.  Specifically, defendants assert

10  that regardless of Walker's ultimate guilt or innocence, the reviewing  state and federal courts found that

11  Danto did not violate Walker's due process rights.  Plaintiffs counter that Walker was never provided an

12  evidentiary hearing, that the previous reviewing courts relied on inaccurate facts when making their

13  determinations, and that the previous reviewing courts were applying a more stringent standard of review on

14  Walker's appeal and petitions for writ of habeas corpus.

15        State court judgments may preclude the relitigation of an identical issue that arises in a subsequent

16  federal civil rights action.  *Allen v. McCurry*, 449 U.S. 90, 101 S. Ct. 411 (1980); *Hawkins v. Risley*,

17  984 F.2d 321, 323 (9th Cir. 1993).  "Federal courts should apply the state's collateral estoppel law in

18  determining whether a § 1983 claim is precluded by a prior state judicial proceeding."  *Presley v.*

19  *Morrison*, 950 F. Supp. 1298, 1305 (E.D. Pa. 1996) (citing 28 U.S.C. § 1738; *Haring v. Prosise*, 462

20  U.S. 306, 313 (1983)); *Allen*, 449 U.S. at 96.  On the other hand, federal courts apply federal law to

21  determine the preclusive effect of federal court judgments on federal questions.  *See Blonder-Tongue*

22  *Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 324 n.12 (1971); *Hawkins v.*

23  *Risley*, 984 F.2d 321, 325 (9th Cir. 1992).  As the underlying state criminal trial is the basis for plaintiffs'

24  state and federal claims, California collateral estoppel law applies.  Regardless, under both the federal and

25  state standards, Danto is entitled to collaterally estop plaintiffs from bringing claims based on the alleged

26  undisclosed plea agreement.

27        In California, collateral estoppel will be applied only when certain threshold requirements are met:

28              First, the issue sought to be precluded from relitigation must be identical to that

1    decided in a former proceeding.  Second, this issue must have actually been
2    litigated in the former proceeding.   Third, it must have been necessarily
     decided in the former proceeding.   Fourth, the decision in the former
3    proceeding must be final and on the merits.  Finally, the party against whom
     the preclusion is sought must be the same as, or in privity with, the party to the
     former proceeding.

*Lucido v. Superior Court of Mendocino County*, 51 Cal. 3d 335, 341 (1990).  If these threshold

requirements are met, the court must still consider whether the application of collateral estoppel in a

particular setting will advance the public policies underlying the doctrine:  (1) preservation of the integrity of

the judicial system, (2) promotion of judicial economy, and (3) protection of litigants from harassment from

vexatious litigation.  *Id.* at 342-43.[3]

### 1.    State proceedings

Before the California Sixth District Court of Appeal, Walker argued, *inter alia*:

    That the efforts of the prosecutor, with the cooperation of counsel for Bowers,
    to keep from Walker the fact that Bowers had entered into a plea bargain to
    testify for the prosecution violated Walker's constitutional right to discovery
    of information which could have been used to impeach Bowers's credibility,
    and in other ways operated to deny his right to a fair trial.

Def.'s Req. J. Notice Ex. D. at 2.  The court of appeal found this argument to be without merit, noting that

"Walker could have requested – and in some instances did request and obtain – limiting instructions under

Evidence Code section 355 presumptively sufficient to protect his right to a fair trial."  *Id.* at 42.  The court

also found that Walker's attorney expected Bowers to testify against Walker.  In a colloquy outside the

presence of the jury, counsel for Walker stated that "I . . . foresee that my colleague [presumably referring

to counsel for Bowers], for sound tactical reasons might wish to cast as many aspersions on my client's

character as possible. . . . "  *Id.* at 43.  In another colloquy, counsel for Walker stated that "as far as I

know, the only pause is going to be on the question of whether one of the defendants is going to become a

witness for the prosecution.  That would radically alter the entire complex of this case."  *Id.*  Thus, the court

concluded that "[a]lthough counsel for Walker was understandable [sic] distressed by the announcement of

Bowers's change of plea there is absolutely no indication in the record to counter the strong inference that

---

[3]    For application of federal issue preclusion, there must be: (1) the same issue; (2) actually
litigated and determined; (3) by a valid and final judgment; (4) as to which the determination is essential to
the judgment. REST. (SECOND) OF JUDGMENTS § 27; *Robi v. Five Platters, Inc*., 838 F.2d 318, 322 (9th
Cir.1988); *accord In re Paine*, 283 B.R. 33, 38 (9th Cir. BAP 2002).

1  both counsel and the court had anticipated such a development from the outset.  On the face of the record

2  on appeal we find no fraud sufficient to implicate Walker's right to a fair trial." *Id.* at 44.

3       In a one-line decision, the Supreme Court of California on May 24, 1995 denied Walker's petition

4  for review and for writ of habeas corpus.

5                    **2.      Federal proceedings**

6       Walker subsequently filed a petition for writ of habeas corpus before the U.S. District Court for the

7  Northern District of California, C-95-20390-JW, arguing, *inter alia*, "that he was deprived of his right to a

8  fair trial by the prosecutor's failure to timely reveal his co-defendant's plea agreement[.]"  Def.'s Req. J.

9  Notice Ex. H at 1.  Walker argued "that his constitutional rights to cross-examine witnesses and to all timely

10  discovery were violated by the prosecution's disclosure of Bower's plea agreement just four (4) days prior

11  to the time that Bowers took the stand[,]" when the

12  parties had allegedly reached agreement seventeen days prior.  *Id.* at 6.  "Even assuming that the

13  prosecutor's duty to disclose the plea agreement had arisen earlier than the time that the plea was actually

14  entered," the court did not find that Walker's constitutional rights were violated.  *Id.*  "Petitioner was

15  informed of the plea agreement prior to the time that Bowers took the stand and Petitioner was afforded

16  adequate time for both the preparation and the actual cross-examination of Bowers.  The plea agreement

17  was also acknowledged by Bowers on the stand."  *Id.*

18       The Ninth Circuit affirmed the decision of the district court.  *See Walker v. Marshall*, 168 F.3d

19  504 (9th Cir. 1999).[4]   The Court of Appeal first found that "[t]here was no evidence that a binding plea

20  agreement between the State and Bowers had been reached prior to the time of its disclosure to Appellant.

21  Rather, the State and Bowers were engaged in negotiations regarding a possible plea agreement until the

22  deal was struck. There was no obligation on the State to make disclosure until there was a binding plea

23  agreement." 168 F.3d at **1 (citing *Williams v. Calderon*, 52 F.3d 1465, 1475 (9th Cir.1995)).  The

24  Ninth Circuit went on to hold that even accepting Walker's facts as alleged, he suffered no prejudice from

25  any delayed disclosure because the court recessed for four days to allow Walker's counsel to prepare a

26

27  _____

28       [4]      This decision is cited as the law of the case.

1   cross-examination, counsel did not seek a further continuance, and counsel conducted a competent cross-

2   examination including impeachment of prior inconsistent statements.  *See id.*

3               **3.    Subsequent events**

4          On June 16, 2003, the Office of the District Attorney submitted to the Santa Clara County Superior

5   Court a response to an order to show cause conceding that a writ of habeas corpus should issue and that:

6               (1) newly discovered evidence establishes the Petitioner is actually and
               factually innocent of the crime for which he was convicted and (2) the
7               prosecution's key witness, Rahsson Bowers, and corroborating witness Sarah
               Dunbar provided perjured testimony against Petitioner at trial and (3) the
8               prosecution did not inform the defense that the prosecution had promised a
               benefit to witness Sarah Dunbar regarding an unrelated drug charge in
9               exchange for her testimony.

10  Opp. Ex. 1 at 1-2.[5]

11         On June 20, 2003 the Santa Clara County Superior Court granted Walker's writ of habeas corpus,

12  vacated his conviction and ordered him discharged from custody.  Opp. Ex. 2.  In an accompanying order

13  pursuant to a petition for judicial notice of factual innocence, the court also found, *inter alia*, that Walker

14  was "factually innocent of the murder of Lisa Hopewell."  Def.'s Further Req. J. Notice Ex. L at ¶ 1.

15  Notably, it does not appear that Walker's allegations regarding the failure to disclose the plea agreement

16  was a basis for his release from custody.

17         The parties do not dispute that the claim based on late disclosure of the plea bargain agreement is

18  identical to allegations previously brought before the California Court of Appeal and the federal courts and

19  that the privity requirement is met.  The court is not persuaded that an evidentiary hearing is required for

20  every case in which collateral estoppel is to be applied.  *See Barker v. Hull*, 191 Cal. App. 3d 221, 226

21  (1987) ("[W]hile the party urging the estoppel must prove that the issue was actually litigated and that

22  _____

23          [5]       Defendants object to the introduction of this exhibit, arguing that under California Penal
    Code section 851.8(i), petitions for factual innocence and related findings of factual innocence under
24  California Penal Code section 851.8(c) "shall not be admissible as evidence in any action."  CAL. PENAL
    CODE § 851.8(i).  Defendants further object that the exhibit is not authenticated.  Although technically
25  correct, the court takes as true for purposes of this motion Walker's contention that he was eventually
    found to be innocent.  Thus, defendants' objection does not in any way affect the present motion.
26  Regardless, defendants' motion to strike appears properly based.  To the extent that plaintiffs' Exhibit A is
    offered to establish Walker's factual innocence, plaintiffs' Request for Judicial Notice is stricken.  Plaintiffs
27  may renew their request for judicial notice with proper authentication, and have Exhibit A admitted as a
    public record filed with the Superior Court.  *See Lee*, 250 F.3d 690.  The court takes judicial notice of
28  defendants' Exhibits K and L as public records.  *See id.*  The court also takes judicial notice of plaintiffs'
    Exhibit B.  Pl.'s Req. J. Notice Ex. B; *see id.*

evidence was not *restricted*, he need not establish that any particular type of evidence, such as oral testimony, was presented.").  As detailed above, the late disclosure of the plea bargain agreement was considered multiple times and necessarily decided by both state and federal appellate courts, and the subsequent reversal of Walker's conviction does not change the previous findings that the late disclosure did not violate plaintiff's constitutional rights.  Notably, even accepting plaintiffs' allegations as true and setting aside defendants' argument on collateral estoppel, plaintiffs do not state a claim against Danto for violation of their constitutional rights.  In addition, in this case, application of collateral estoppel will preserve the integrity of previous state and federal decisions finding that plaintiffs' allegations do not state a constitutional violation, and will promote judicial economy.  *See Lucido*, 51 Cal.3d at 342-43; *Robi*, 838 F.2d at 322.

### F.   State claims against Danto

#### 1.   Bane Act

Plaintiffs do not oppose dismissal of their state claim under California Civil Code section 52.1. Accordingly, this claim is dismissed.

#### 2.   Immunity under section 821.6

The parties dispute whether California Government Code section 821.6 ("Institution or prosecution of judicial or administrative proceeding") protects public defenders from plaintiffs' tort claims for negligence and intentional infliction of emotional distress.  Plaintiffs argue that the immunity was intended only to protect prosecutors from malicious prosecution claims, while defendants contend that Danto is entitled to section 821.6 protection.

While principally applied to malicious prosecution actions, section 821.6 immunity has been interpreted quite broadly and includes immunity from actions for intentional infliction of emotional distress, negligence, and conspiracy.  *See, e.g., Stearns v. County of L.A.*, 275 Cal. App. 2d 134 (1969) (applying section 821.6 immunity to a deputy county coroner); *Jenkins v. County of Orange*, 212 Cal. App. 3d 278 (1989) (applying section 821.6 immunity to a social worker); *Gensburg v. Miller*, 31 Cal. App. 4th 512 (1994) (applying section 821.6 immunity to employees of the state department of social services); *Kaplan v. LaBarbera*, 58 Cal. App. 4th 175 (1997) (applying section 821.6 immunity to the family support division of the district attorney's office).

Since investigation is an essential step to the institution of formal proceedings, it, too, is cloaked

1  with immunity.  *See Kemmerer v. County of Fresno*, 200 Cal. App. 3d 1426, 1436-37 (1988).  Thus,

2  section 821.6 "shields investigative officers from liability for injuries suffered by witnesses or victims during

3  an investigation."  *Baughman v. State of California*, 38 Cal. App. 4th 182, 192 (1995).  Under section

4  821.6, an officer's actions during an investigation are entitled to immunity even if they had acted negligently,

5  maliciously or without probable cause in carrying out his duty.  *Id.*  Defendants cite to no case, however,

6  that supports the proposition that section 821.6 protection should be extended to public defenders, who are

7  not involved in the institution or prosecution of judicial proceedings and, as noted earlier, are considered

8  private actors for purposes of section 1983 liability once they are assigned to a client.  *Cf. Polk County*,

9  454 U.S. at 325.  Defendants' motion to dismiss based on section 821.6 prosecutorial immunity is denied.

10  **3.      Cal. Gov't Code § 820.2**

11  On reply, defendants fail to dispute plaintiffs' contention that California Government Code section

12  820.2 provides immunity for basic policy decisions but does not protect Danto's "ministerial

13  implementation" of that basic policy.[6]  *See Ogborn v. City of Lancaster*, 101 Cal. App. 4th 448, 461

14  (2002).

15  **4.      Litigation privilege**

16  Danto argues that she is protected under the litigation privilege provided by California Civil Code §

17  47 ("Privileged publication or broadcast"), which provides that "A privileged publication or broadcast is one

18  made. . . .  [i]n any . . . . judicial proceeding . . . . "  CAL. CIV. CODE § 47(b)(2).   "Although originally

19  enacted with reference to defamation [citations], the privilege is now held applicable to any communication,

20  whether or not it amounts to a publication [citations], and all torts except malicious prosecution."  *Silberg v.*

21  *Anderson*, 50 Cal.3d 205, 212 (1990) (citations omitted).   "Further, it applies to any publication required

22  or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even

23  though the publication is made outside the courtroom and no function of the court or its officers are

24  involved." *Id.* (citations omitted).   "[T]he privilege applies to any communication (1) made in judicial or

25  quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects

26

27          [6]         Section 820.2 provides: "[A] public employee is not liable for an injury resulting from his
act or omission where the act or omission was the result of the exercise of the discretion vested in him,
28  whether or not such discretion be abused."  CAL. GOV'T CODE § 820.2.

1  of the litigation; and (4) that have some connection or logical relation to the action." *Id.* (citations omitted).

2  "The primary purpose of the privilege is to afford litigants 'the utmost freedom of access to the courts

3  without fear of being harassed subsequently by derivative tort actions.'" *Navellier v. Sletten*, 106 Cal.

4  App. 4th 763, 770 (2003). "A threshold issue with respect to the privilege is whether the injury arose from

5  'communicative acts,' which are privileged, or 'noncommunicative conduct,' which is not." *Id.* (citing

6  *Kimmel v. Goland*, 51 Cal. 3d 202, 211 (1990)). "However, the distinction between communicative acts

7  and noncommunicative conduct ultimately hinges on the gravamen of the action." *Navellier*, 106 Cal. App.

8  4th at 771 (citing *Rubin v. Green*, 4 Cal.4th 1187, 1195 (1993)).

9      Plaintiffs argue that Danto's conduct does not constitute "communication," but rather focuses on the

10  suppression of Bowers' plea deal with Schon. Thus, as their claim centers around non-communicative

11  conduct, the litigation privilege is inapplicable. Opp. at 17-18 (citing *Mansell v. Otto*, 108 Cal. App. 4th

12  265, 275 (2003) (unauthorized reading of mental health records by defendants not protected by litigation

13  privilege)). Plaintiffs cannot dispute, however, that without the alleged plea agreement there is no basis for

14  a claim. As the plea agreement, which constitutes communicative conduct, also constitutes the gravamen of

15  plaintiffs' action, Danto is properly protected under the litigation privilege.

16      **G.    Leave to amend**

17      Leave to amend should be granted unless the amendment would be futile. FED. R. CIV. P. 15(a);

18  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986); *DeSoto v.*

19  *Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992); *City of Arcadia v. U.S. Environmental*

20  *Protection Agency*, 265 F. Supp. 2d 1142, 1151 (N.D. Cal. 2003). Plaintiffs have filed an amended

21  complaint, but may be able to cure deficiencies set forth in this order. Accordingly, plaintiffs are granted

22  thirty days leave to amend from the issuance of this order to file a second amended complaint.

23

24      **III.   ORDER**

25      For the foregoing reasons, the court grants in part and denies in part defendants' motions to dismiss

26  as follows: plaintiffs' *Monell* claims against the County based on the actions of the district attorney, the

27  sheriff and his deputies, and the Conflicts Administration Program are dismissed because they are state

28  officials;  defendants' motion to dismiss plaintiffs' *Monell* claims against the County based on the actions of

1   Public Defender Danto is denied to the extent that Danto was not a state official, but is granted to the extent

2   such claims are based on Danto's failure to disclose the plea agreement, which is barred by collateral

3   estoppel; plaintiffs' claims against the sheriff and district attorney are barred by Eleventh Amendment

4   sovereign immunity; plaintiffs' claims against the Public Defender's Office and Conflicts Administration

5   Program are dismissed for failure to state a claim; plaintiffs' state claim for damages under Article I, Section

6   15 is dismissed because plaintiffs do not contest that there is no indication that damages are provided for

7   under Article I, Section 15; defendants' motion to dismiss plaintiffs' Bane Act claim against the County is

8   denied as to Walker, but granted as to Myrtle Walker and William Walker; plaintiffs' claims against the

9   County based on negligent supervision and hiring are dismissed; plaintiffs' claims against Danto, to the

10  extent they are based on her failure to disclose the plea agreement, are barred by collateral estoppel and

11  alternatively for failure to state a claim; defendants' motion to dismiss plaintiffs' Bane Act claim against

12  Danto is granted; defendants' motion to dismiss claims against Danto based on sections 821.6 and 820.2 is

13  denied; defendants' motion to dismiss plaintiffs' claims against Danto based on the litigation privilege is

14  granted.  Plaintiffs are given thirty days leave to amend.

15

16

17  DATED:      9/30/05                          /s/ Ronald M. Whyte
                                                 RONALD M. WHYTE
18                                               United States District Judge

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING IN PART, DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS
No. C-04-02211 RMW
TNL                                              21

1    **Notice of this document has been electronically sent to:**

2    **Counsel for Plaintiff(s):**

3    Matthew D. Davis                    mdavis@walkuplawoffice.com
     Erik T. Atkisson
4    Richard H. Schoenberger            rschoenberger@walkuplawoffice.com

5

6    **Counsel for Defendant(s):**

7    Aryn Paige Harris                   aryn_harris@cco.co.scl.ca.us
     Gregory J. Sebastinelli            gregory.sebastinelli@cco.co.scl.ca.us
8    My-Le Jacqueline Duong             Jacqueline.duong@cco.sccgov.org
     Winifred Botha                     winifred_botha@mail.cco.co.santa-clara.ca.us

9

10

11

12   Counsel are responsible for distributing copies of this document to co-counsel that have not registered for
     e-filing under the court's CM/ECF program.

13

14

15   **Dated:** _____9/30/05_____        _____/s/ MAG_____
                                                **Chambers of Judge Whyte**

16

17

18

19

20

21

22

23

24

25

26

27

28