**\*E-FILED ON 12/2/05\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| QUEDILLAS RICARDO WALKER, MYRTLE VIVIAN WALKER and WILLIAM BERKELEY WALKER,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SANTA CLARA, GERALD EGGE, EARL PENNINGTON, GAIL DAVIS, JOHN SCHON, RANDY DANTO and DOES 1-100,<br><br>    Defendants. | No. C04-02211 RMW (HRL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF QUEDILLAS RICARDO WALKER'S MOTION TO COMPEL DISTRICT ATTORNEY DOCUMENTS**<br><br>**[Re: Docket No. 54]** |

Plaintiff Quedillas Ricardo Walker ("plaintiff" or "Walker") moves to compel the production of documents from the Santa Clara County District Attorney's Office.[1] The County opposed the motion. Pursuant to this court's interim order, the County submitted the disputed documents for an *in camera* review. Upon consideration of the papers submitted, as well as the arguments presented at the May 24, 2005 hearing, the court issues the following order.

In this civil rights action, plaintiff alleges that as a result of defendants' misconduct, he was wrongfully convicted and imprisoned for the 1991 murder of Lisa Hopewell. He was released twelve

---

[1] Plaintiff states that the requested documents are responsive to his Document Request Nos. 10, 22, 26, 30, 44, 45 and 59.

1  years later upon issuance of a writ habeas corpus, which was supported by the District Attorney's
2  Office.

3  District Attorney George Kennedy ("Kennedy") asked Assistant District Attorney Karyn
4  Sinunu ("Sinunu") to review and evaluate the investigation and prosecution of Walker. Although the
5  date of Kennedy's request is not entirely clear, the record presented suggests that it may have been
6  made sometime around December 2002. Sinunu's evaluation culminated in an August 18, 2003
7  memorandum ("August 18, 2003 Memo") to Kennedy. That memo was also copied to Assistant
8  District Attorney John Schon ("Schon"), who prosecuted Walker's case, and Chief Assistant District
9  Attorney Paul Kuty ("Kuty"), who is identified as having responsibility for managing civil litigation
10 against the District Attorney's Office. Sinunu says that she prepared three other documents which she
11 used as an aid in preparing her August 18, 2003 Memo: (1) "Draft: People v. Rahsson Germaine
12 Bowers and Quedillio [sic] Ricardo Walker Santa Clara Docket 149554"; (2) "People v. Rahsson
13 Germaine Bowers and Quedillio Ricardo Walker Santa Clara Docket 149554"; and (3) "Follow-up
14 Investigation." For convenience, the court refers to these documents as the "Sinunu Documents."

15 As part of her work responsibilities, Sinunu also made statements to the media about the
16 investigation which were printed in a June 22, 2003 San Jose Mercury News article. Among other
17 things, the article indicates that the District Attorney's Office would "analyze ways to avoid future
18 mistakes." (Harris Decl., Ex. A). Schon requested that the statements be retracted, and Sinunu
19 refused. The discourse between Sinunu and Schon as to the media statements is documented in three
20 internal memoranda: (1) Sinunu's July 7, 2003 memorandum to Schon; (2) Sinunu's July 15, 2003
21 addendum to Schon; and (3) Schon's August 1, 2003 memorandum to Sinunu, Kennedy and Kuty,
22 which apparently was sent by email to Kennedy on September 10, 2003. Sinunu's July 7, 2003 and
23 July 15, 2003 memos were also copied to Kennedy and Kuty. For convenience, the court refers to
24 these documents as the "Media Memos."

25 Walker does not seriously dispute that the August 18, 2003 Memo is privileged, but he
26 contends that the Sinunu Documents and the Media Memos are not. The County contends that the
27 documents are shielded from disclosure by several privileges, namely, the deliberative process
28 privilege, the attorney-client privilege, the official information privilege and the self-critical analysis

1  privilege. It maintains that all of the disputed documents were generated for the purposes of (1)
2  identifying any shortcomings in the prosecution of plaintiff, (2) aiding Kennedy in a decision as to
3  whether any personnel or institutional policy changes were warranted; and (3) conferring with County
4  counsel about the instant lawsuit.

## I.  DISCUSSION

**A.     The Deliberative Process Privilege**

As noted above, plaintiff does not seriously dispute that Sinunu's August 18, 2003 Memo to Mr. Kennedy is protected by the deliberative process privilege. However, he argues that the Media Memos are not covered by the privilege because they were generated outside of the decision-making process. The County argues that all of the documents at issue are covered by the deliberative process privilege because they are part and parcel of the underlying investigation into the conduct of plaintiff's prosecution.

The deliberative process privilege is one of the recognized exemptions to disclosure under the Freedom of Information Act. *Carter v. United States Dep't of Commerce*, 307 F.3d 1084, 1088-89 (9th Cir. 2002). "The purpose of this privilege is 'to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny.'" *Id*. at 1089 (quoting *Assembly of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)). The government bears the burden of proving that the documents in question are exempt from disclosure. *Id*. at 1088. The privilege has been described as a narrow one, to be "'strictly confined within the narrowest possible limits consistent with the logic of its principles.'" *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp.2d 1118, 1122 (N.D. Cal. 2003) (quoting *Sanchez v. Johnson*, No. C00-01593, 2001 WL 1870308 at *6 (N.D. Cal. Nov. 19, 2001)).

The privilege requires that documents be both "predecisional" and "deliberative." *Carter*, 307 F.3d at 1089. "'A document may be considered predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Id*. (quoting *Assembly*, 968 F.2d at 921)). Material which chronologically predates a decision, but which does not contribute to that decision, is not "predecisional." *Id*. The key question underlying the deliberative process privilege is "whether the disclosure of materials would expose an agency's decision-making process in such a way as to

1  discourage candid discussion within the agency and thereby undermine the agency's ability to perform

2  its functions. . . ." *Id*. at 1090. Thus, predecisional materials are privileged insofar as they reveal the

3  mental processes of decisionmakers. *Id.*

4  **1. Sinunu's August 18, 2003 Memo and the Sinunu Documents**

5  This court's review of the August 18, 2003 Memo confirms that the memorandum is both

6  predecisional and deliberative. Although it appears to summarize factual data pertaining to Walker's

7  prosecution, that data is not severable from deliberative content and therefore is also protected. *See*

8  *North Pacifica, LLC*, 274 F. Supp.2d at 1122 ("[F]actual material that 'is so interwoven with the

9  deliberative material that it is not severable' is protected") (quoting *Federal Trade Comm'n v.*

10 *Warner Communications*, 742 F.2d 1156, 1161 (9th Cir. 1984)). While the exhibits attached to the

11 memorandum appear to be purely factual, the County's counsel represents that those documents have

12 already been produced to plaintiffs.

13 Plaintiff nonetheless contends that the Sinunu Documents – the drafts and notes used to

14 prepare the August 18, 2003 Memo –  are not protected by the deliberative process privilege. To the

15 contrary, the privilege "covers recommendations, draft documents, proposals, suggestions, and other

16 subjective documents which reflect the personal opinions of the writer rather than the policy of the

17 agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

18 Nevertheless, having reviewed these documents, this court finds that a considerable portion of these

19 documents merely recite facts learned in the investigative process. Purely factual data that does not

20 reflect the underlying deliberative process are not protected. *North Pacifica, LLC*, 274 F. Supp.2d

21 at 1122.

22 Walker argues that even if the privilege applies to these documents, the privilege has been

23 waived because they were disclosed to Schon, and not solely to the claimed decisionmaker, Kennedy.

24 However, the case Walker relies upon, *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503 (S.D. Cal.

25 2003), is inapposite. In *Kintera, Inc.*, defendants voluntarily and publicly disclosed portions of a

26 privileged document. In finding that work product protection had been waived, the court reasoned

27 that the defendants could not selectively disclose self-serving information from a protected document,

28 while claiming that the doctrine nonetheless shielded the full substance of the document. *Id*. at 512. In

the instant case, this court declines to find that there has been a waiver by virtue of the disclosure to Schon.

Walker argues that his need for the documents overrides the privilege in any event. There is no dispute that the deliberative process privilege is qualified and may be overcome if a litigant's need for the information outweighs the government's interest in non-disclosure. *See FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). In balancing these interests, courts consider several factors including: (1) the relevance of the evidence; (2) the availability of evidence from other sources; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion about policies and decisions. *Id.* at 1161. Other factors that courts may consider include: (5) the interest of the litigants and of society in accurate judicial fact-finding; (6) the seriousness of the litigation and the issues involved; (7) the presence of issues concerning governmental misconduct; and (8) the federal interest in the enforcement of federal law. *See North Pacifica, LLC*, 274 F. Supp.2d at 1122 (citing *Irvin v. United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989)).

In the instant case, the federal interest in enforcement of federal constitutional rights weighs in favor of disclosure. Moreover, there is no dispute as to the seriousness of plaintiff's claims in this action, and litigants and the public always have an interest in accurate judicial fact-finding. Further, plaintiff claims that his constitutional rights were violated due to the alleged misconduct of the government.

Insofar as Schon remains a defendant in this action, the documents are relevant or reasonably calculated to lead to the discovery of admissible evidence of plaintiff's claims. *See* Fed.R.Civ.P. 26(b)(1). Nonetheless, to the extent plaintiff's stated interest in the documents is their claimed relevance to his *Monell* claims and to the conduct of the County and the District Attorney's Office, plaintiff's arguments are less compelling. In its September 30, 2005 order granting defendants' motion to dismiss, the District Court concluded, among other things, that (1) the County is not subject to liability under 42 U.S.C. § 1983 for the actions of the district attorney and Schon; and (2) plaintiffs' claims against the district attorney are barred by Eleventh Amendment sovereign immunity. (*See*

1  Docket No. 72).[2]  He further argues that individual defendants Schon and public defender Randy
2  Danto will not have the same information the County possesses.  Here, however, defense counsel
3  represents that factual data are not being withheld.  Moreover, the court finds that disclosure of the
4  documents would compromise the government's ability to conduct thorough and frank investigations.
5  Accordingly, the court concludes that, on balance, the privilege is not overcome by plaintiff's
6  asserted need for the documents.

7  **2.  Media Memos**

8  As for the Media Memos, the County contends that these documents are also covered by the
9  deliberative process privilege because they are part and parcel of Sinunu's August 18, 2003 Memo
10  evaluating the District Attorney's investigation of Walker's prosecution.  Here, it emphasizes that the
11  Media Memos contain some of the same analysis contained in the August 18, 2003 Memo.

12  It is true that the Media Memos were copied to Kennedy and that they also predate the
13  August 18, 2003 Memo to him.  Nevertheless, this court concludes that the Media Memos are not
14  "predecisional."  Based upon the court's *in camera* review, it appears that the Media Memos were
15  not created as part of the deliberative process for which the August 18, 2003 Memo was generated.
16  Defense counsel acknowledged at the hearing that unlike the August 18, 2003 Memo, the Media
17  Memos were not generated at Kennedy's behest.  Rather, it appears that the Media Memos were
18  generated as part of an internal dialogue between Sinunu and her colleague, Schon, about Sinunu's
19  refusal to seek a retraction of the statements printed in the San Jose Mercury News.  Indeed, the
20  court's *in camera* review reveals that the Media Memos (specifically, Sinunu's July 7, 2003 memo
21  and the July 15, 2003 addendum) were expressly not directed to the post-trial investigation of
22  Walker's prosecution.  That Sinunu chose to document her refusal to seek a retraction based upon the
23  same information which she ultimately transmitted to Kennedy in her August 18, 2003 Memo does not
24  bring these documents within the scope of the deliberative process privilege.  *See Carter*, 307 F.3d at
25  1089 ("'Material which predates a decision chronologically, but did not contribute to that decision, is
26  not predecisional in any meaningful sense.'") (quoting *Assembly of California*, 968 F.2d at 921); *see*

---

[2]  Plaintiff has filed a Second Amended Complaint again naming the County and the District Attorney's Office as defendants.

6

1  *also Coastal States*, 617 F.2d at 868 ("[I]f document are not part of a clear 'process' leading to a
2  final decision on the issue, . . . they are less likely to be properly characterized as predecisional . . ..").
3        Having determined that the August 18, 2003 Memo is not discoverable and that the Sinunu
4  Documents are not discoverable (except as to the purely non-privileged factual data), the remainder of
5  this order addresses only whether the Media Memos are protected by any of the other privileges
6  asserted by the County.

### B.     The Attorney-Client Privilege

      The attorney-client privilege applies "(1) [w]hen legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002). The party asserting the privilege has the burden of establishing that the privilege applies. The privilege, even if established, is strictly construed. *North Pacifica, LLC*, 274 F. Supp.2d at 1126 (citing *Martin*, 278 F.3d at 999-1000)). "Because the attorney-client privilege has the effect of withholding relevant information from the factfinder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).

      For purposes of the instant motion, the first three of the above-listed elements warrant particular attention. There is no apparent attorney-client relationship between the authors of the documents (Schon and Sinunu) and the stated recipients (Schon, Sinunu, Kennedy and Kuty). Although the Media Memos were eventually given to County counsel in this action some five months after they were created, the documents were, at their inception, internal memoranda generated as part of the discourse between Schon and Sinunu. As such, they do not appear to have been prepared by a "client" for the purpose of obtaining legal advice from an attorney in her professional capacity as a legal advisor. Merely transmitting documents to an attorney does not bring them within the scope of the privilege. *See generally Colton v. United States*, 306 F.2d 633, 639 (2d Cir. 1962).

Nonetheless, the County argues, in essence, that the Media Memos are protected by the attorney-client privilege because the documents reflect or contain the same information as that contained in Sinunu's August 18, 2003 memo to Kennedy – i.e., information which Kennedy states "served to advise [him] about the handling of the prosecution so that [he] could consult with counsel about [the] Office's position on the merits of the litigation." (Kennedy Decl., ¶ 9). The County relies upon dicta in *United States v. Chevrontexaco Corp.*, 241 F. Supp.2d 1065 (N.D. Cal. 2002) in which the court observes, as a general principle, that "internal communications that reflect matters about which the client intends to seek legal advice are protected." *Id*. at 1077. The underlying rationale is that such communications "are comparable to notes a client would make to prepare for a meeting with her lawyer – notes which could serve as an agenda or set of reminders about things to ask or tell counsel." *Id*.

Here, by contrast, the Media Memos were not created or generated for the purpose of obtaining legal advice from counsel, but rather, to document Sinunu's refusal to seek a retraction from the San Jose Mercury News and Schon's response to Sinunu. This court is unpersuaded that the fact that the exchange between Sinunu and Schon concerned the subject matter of the instant lawsuit automatically immunizes these documents on the basis of the attorney-client privilege. Accordingly, the court concludes that the privilege does not apply.

**C.   The Official Information Privilege**

Further, the court is unpersuaded that the Media Memos are protected by the official information privilege. The County acknowledges that Kennedy's affidavit does not address the Media Memos. It argues that Sinunu's affidavit is nevertheless sufficient to establish the privilege as to these documents. Plaintiff first argues that Ms. Sinunu is not qualified to provide an affidavit on this privilege because she is not an "agency head." While "[i]t is essential that the affidavit come from an official in the affected agency," the affiant must also have "personal knowledge of the principal matters covered by the affidavit." *Kelly v. City of San Jose*, 114 F.R.D. 653, 669 (N.D. Cal. 1987). Because Sinunu purportedly has personal knowledge of her comments to the Mercury News, the court is less concerned about whether or not she might be considered an agency "official." Nonetheless, the court agrees that Sinunu's affidavit is insufficient to invoke the privilege.

8

Sinunu's affidavit does not supply all of the information required by *Kelly* – namely, (1) specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff or his lawyer; (2) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests; and (3) a projection of how much harm would be done to the threatened interests if the disclosure were made. *See Kelly*, 114 F.R.D. at 670. Accordingly, the official information privilege does not apply.

### D.   The Self-Critical Analysis Privilege

The validity of the so-called "self-critical analysis" privilege has not been officially recognized by the Ninth Circuit or the Supreme Court. *Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423 (9th Cir. 1992). In *Dowling*, the Ninth Circuit concluded that to the extent the privilege exists, "voluntary routine pre-accident safety reviews are not protected." *Id*. at 427. However, in so holding, the Ninth Circuit did not recognize the validity of the privilege, noting that "[t]he Supreme Court and the circuit courts have neither definitively denied the existence of such a privilege, nor accepted it and defined its scope." *Id*. at 426 n.1. In a subsequent case, the Ninth Circuit confirmed that it "has not recognized this novel privilege." *Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1076 n.7 (9th Cir. 2000).

Even if the privilege exists, this court is disinclined to apply it to the Media Memos here. Courts that recognize the privilege requires that the information satisfy several criteria: (1) the information must result from a self-analysis undertaken by the party seeking protection; (2) the public must have a strong interest in maintaining the flow of information; (3) the information must be of a type whose flow would be curtailed if discovery were allowed; and (4) the document was prepared with the expectation that it would be kept confidential, and has in fact been kept confidential. *Dowling*, 971 F.2d at 425-26.

In this case, the Media Memos in question did not result from "self-analysis." Rather, as noted above, they were generated as a result of an apparent exchange between Schon and Sinunu over Sinunu's refusal to retract her statements to the media about Schon's conduct. Accordingly, the court concludes that the "self-critical analysis" privilege does not apply.

**II.  ORDER**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's motion to compel is DENIED as to the August 18, 2003 Memo.

2. Plaintiff's motion to compel is GRANTED IN PART AND DENIED IN PART as to the Sinunu Documents.  These documents should be produced, but the court finds that portions of those documents may be redacted as follows:

 a. "Draft: People v. Rahsson Germaine Bowers and Quedillio [sic] Ricardo Walker Santa Clara Docket 149554":

- Page 4 – The last sentence under "New Evidence," first bullet point, may be redacted.
- Page 6 – To the extent this page appears to reflect Sinunu's internal notes and thoughts about the investigation, the text on this page may also be redacted.

 b. "People v. Rahsson Germaine Bowers and Quedillio Ricardo Walker Santa Clara Docket 149554"

- Page 4 – Under "New Evidence," first bullet point, the last two sentences may be redacted.
- Page 5 – In the carry-over paragraph at the top of the page, the last sentence that begins "There is . . ." may be redacted.

 c. "Follow-up Investigation"

- Page 1 – Under the third bullet point, the last sentence that begins "No . . ." may be redacted.
- Page 2 – The sentence between the paragraph numbered "10" and the first bullet point may be redacted.

3. Plaintiff's motion to compel is GRANTED as to the Media Memos (i.e., Sinunu's July 7 and 15, 2003 memos, Schon's August 1, 2003 memo, and Schon's September 10, 2003 email).  These documents shall be produced no later than **December 16, 2005**.  To the extent defendants believe that these documents warrant particular protection, they may designate them as appropriate

under the stipulated protective order entered in this action.

Dated: December 2, 2005

                                             /s/ Howard R. Lloyd
                                            HOWARD R. LLOYD
                                            UNITED STATES MAGISTRATE JUDGE

**5:04-cv-2211 Notice will be electronically mailed to:**

Erik T Atkisson eatkisson@reedsmith.com, dkelley@reedsmith.com

Winifred Botha winifred_botha@mail.cco.co.santa-clara.ca.us

Matthew D. Davis mdavis@walkuplawoffice.com

My-Le Jacqueline Duong Jacqueline.duong@cco.sccgov.org

Aryn Paige Harris aryn_harris@cco.co.scl.ca.us

Richard H. Schoenberger rschoenberger@walkuplawoffice.com,

Gregory J. Sebastinelli gregory.sebastinelli@cco.co.scl.ca.us

Counsel are responsible for distributing this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.