E-FILED on    2/24/06

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| QUEDILLIS RICARDO WALKER, MYRTLE VIVIAN WALKER, and WILLIAM BERKELEY WALKER,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA, GERALD EGGE, GAIL LEWIS, EARL PENNINGTON, JOHN SCHON, RANDY DANTO, and DOES 1 to 100,<br><br>Defendants. | No. C-04-02211 RMW<br><br>ORDER DENYING RANDY DANTO'S MOTION TO DISMISS AND GRANTING SANTA CLARA COUNTY'S MOTION TO DISMISS<br><br>[Re Docket Nos. 79] |

On September 30, 2005 this court dismissed without prejudice several claims in Quedillis Ricardo Walker, Myrtle Vivian Walker, and William Berkeley Walkers' (collectively "plaintiffs") first amended complaint ("FAC") against Deputy Public Defender Randy Danto ("Danto") and various entities connected with Santa Clara County ("County"). On October 31, 2005 plaintiffs filed a second amended complaint ("SAC"). Danto and the County again move to dismiss. Plaintiffs oppose the motion. For the reasons discussed below, the court denies Danto's motion and grants the County's motion.

1

## I. BACKGROUND

2  **A.  The FAC**

As detailed in the September 30 Order, Quedillis Walker served twelve years in prison after being convicted of murdering his ex-girlfriend. In 2003, a writ of *habeas corpus* freed him. In the FAC, plaintiffs alleged that Rahsson Bowers' ("Bowers") fingerprints were found at the crime scene. FAC ¶ 31. Investigators never found physical evidence linking Walker to the crime. *Id*. Bowers falsely told authorities that Walker had been his accomplice. *Id*. at ¶ 34. Sarah Dunbar ("Dunbar"), who knew Walker, was awaiting trial on a drug charge. *Id*. at ¶ 39. Deputy District Attorney John Schon ("Schon") coaxed Dunbar into testifying falsely that Walker was violent, had threatened her, and wore gloves similar to those the police found near the victim. *Id*. at ¶ 39. Danto desperately sought a plea bargain for Bowers from Schon. *Id*. at ¶ 45. Although these discussions would have been valuable impeachment evidence against Bowers, Walker's attorney never learned of them. *Id*. Danto and Schon struck a deal where Bowers pled to second degree murder in exchange for implicating Walker. *Id*. at ¶ 46. Danton and Schon also agreed to suppress the plea agreement for the length of the state's case against Walker. *Id*. at ¶ 47. During the trial, Danto "decimate[d] Walker's character, all in the name of supporting her client's incredulous story that Walker had forced him to participate in [the] murder[.]" *Id*. at ¶ 48.

**B.  The September 30 Order**

In the September 30 Order, the court noted that public defenders generally do not act "under color of state law" for the purpose of section 1983 liability. September 30 Order at 7:13-22. However, the court reasoned that private individuals may act under of color of state law "by engaging in a conspiracy with state officials to deprive another of federal rights." *Id*. at 7:22-23. The court explained that "[p]laintiffs' claim appears to be that Danto acted under color of state law by [(1)] agreeing with . . . Schon to bring in character evidence about Walker's purported violent behavior, in purported defense of Bowers [and (2)] fail[ing] to reveal that she had reached a plea agreement with Schon regarding . . . Bowers." *Id*. at 7:24-8:1. The court held that plaintiffs failed to state a claim under section 1983. *Id*. at 18:5-7.

ORDER DENYING RANDY DANTO'S MOTION TO DISMISS AND GRANTING SANTA CLARA COUNTY'S MOTION TO DISMISS
No. C-04-02211 RMW
DOH                                                                 2

1    The court also held that collateral estoppel barred plaintiffs' claims "based on the alleged
2  undisclosed plea agreement" against Danto. *Id*. at 14:7-26.  First, this court noted that the California
3  Court of Appeal had rejected the argument that Danto's suppression of the plea agreement violated
4  Walker's constitutional rights. *Id*. at 15:10-14.  According to the Court of Appeal, because (1)
5  Walker requested limiting instructions about Bowers' testimony and (2) Walker's attorney expected
6  Bowers to testify against Walker, "there is no indication in the record to counter the strong inference
7  that both counsel and the court had anticipated such a development from the outset." *Id*. at 15:24-
8  16:2 (internal citation omitted).  Second, this court explained that Walker had based a previous
9  petition for a writ of *habeas corpus* on the theory that the prosecution did not disclose Bowers' plea
10 agreement until just four days before Bowers took the stand. *Id*. at 16:6-14.  The district court in
11 that matter determined that Walker had failed to prove a constitutional violation because he received
12 adequate time to cross-examine Bowers, who described the plea agreement while on the stand. *Id*. at
13 16:15-17.  The Ninth Circuit affirmed, reasoning that the criminal trial court recessed the trial for
14 four days after the prosecution revealed Bowers' plea. *Id*. at 16:24-17:2.  Third, this court reasoned
15 that although the Santa Clara Superior Court ultimately granted Walker's petition for a writ of
16 *habeas corpus*, "it does not appear that Walker's allegations regarding the failure to disclose the plea
17 agreement w[ere the] basis for his release from custody." *Id*. at 17:15-16.  Therefore, because "[t]he
18 parties do not dispute that the claim based on late disclosure of the plea bargain agreement is identical
19 to allegations previously brought before the California Court of Appeal and the federal courts and
20 that the privity requirement is met," the court held that that collateral estoppel barred plaintiffs'
21 claims "based on the alleged undisclosed plea agreement" against Danto. *Id*. at 17:17-19; 14:7-26.

22    **C.    The SAC**

23    The SAC adds an allegation that Danto conspired with Schon to suborn perjury on Dunbar's
24 cross-examination:

> Furthermore, on information and belief, the conspiracy established at the beginning
> of trial between Danto and Schon, referenced above, included an agreement that
> Danto would elicit testimony from Dunbar, which Danto knew was perjured, that
> would be damaging to Walker. As with the testimony from Bowers, only Danto was
> legally permitted to elicit Dunbar's damaging testimony, and Danto did so through
> an extensive cross-examination of Dunbar. Danto was motivated to engage in this

1 | aspect of the conspiracy for the same reasons as discussed above regarding Bowers'
2 | testimony, i.e., only by assisting the prosecution's case against Walker could Danto
secure Schon's guarantee to allow Bowers to plead to second degree murder.

*Id*. at ¶ 50.

## II. ANALYSIS

### A. Motion to Dismiss

Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept the facts alleged in the complaint as true. *Id*. "A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B. Claims Against Danto

#### 1. Under Color of State Law

Section 1983 liability attaches to "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory" causes a constitutional deprivation. 42 U.S.C. § 1983. As the September 30 Order noted, "generally public defenders are private individuals for purposes of section 1983, and thus do not act under color of state law." September 30 Order at 7:19-20 (citing *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)). However, a public defender may act under color of state law "by engaging in a conspiracy with state officials to deprive another of federal rights." September 30 Order at 7-22-24 (citing *Tower v. Glover*, 467 U.S. 913, 923 (1983)). Danto relies on *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988) for the proposition that, to have formed a conspiracy, she and Schon "must share common objectives." Rep. Supp. Mot. Dism. at 5:15-16 (emphasis omitted). According to Danto, she and Schon could not have done so because of their adversarial relationship in the criminal trial process.

The court disagrees. Plaintiffs' new allegation — that Danto and Schon agreed that Danto would cross-examine Dunbar for the express purpose of falsely casting Walker in a bad light — is

precisely the kind of meeting of the minds that can transform non-state action into conduct performed under color of state law. *See, e.g., Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983) (allegations of conspiracy at the pleading stage "need not be extensive, but it must be enough to avoid a finding that the suit is frivolous"); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) (allegations that police officers told skinheads that they were free to assault demonstrators "[a]re far from conclusory and suffic[e] to withstand a motion to dismiss for failure to allege conspiracy with the requisite specificity"). In addition, Danto's reliance on *Tarkanian* is misplaced. That case involved the issue of whether the NCAA, a private "person" for section 1983 liability, engaged in state action when it persuaded UNLV, a state entity, to suspend its popular basketball coach. The coach contended that UNLV had delegated power to the NCAA to conduct investigations and make recommendations. The Supreme Court rejected this argument, reasoning that the two entities' interests diverged:

> Indeed, the notion that UNLV's promise to cooperate in the NCAA enforcement proceedings was tantamount to a partnership agreement or the transfer of certain university powers to the NCAA is belied by the history of this case. It is quite obvious that UNLV used its best efforts to retain its winning coach-a goal diametrically opposed to the NCAA's interest in ascertaining the truth of its investigators' reports. During the several years that the NCAA investigated the alleged violations, the NCAA and UNLV acted much more like adversaries than like partners engaged in a dispassionate search for the truth . . . . Just as a state-compensated public defender acts in a private capacity when he or she represents a private client in a conflict against the State, the NCAA is properly viewed as a private actor at odds with the State when it represents the interests of its entire membership in an investigation of one public university.

*Id*. at 196 (internal citations omitted). However, unlike *Tarkanian*, which held that a bare "promise to cooperate" with a state actor did not subject a private entity to section 1983 liability, here plaintiffs claim that Danto and Schon strove to achieve a common goal: forcing Dunbar to lie in order to make Walker look guilty. Also unlike *Tarkanian*, where there was nothing illegal about the agreement between UNLV and the NCAA, here plaintiffs allege that Danto and Schon struck a deal specifically to violate his constitutional rights.[1] Finally, the court notes that the California Court of

---

[1] Indeed, "[t]he knowing use of perjured testimony on the part of the government constitutes a denial of due process because such 'a deliberate deception of court and jury' is 'inconsistent with the rudimentary demands of justice.'" *United States v. Kaufmann*, 783 F.2d 708, 709 (7th Cir. 1986) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Plaintiffs also argue

1  Appeal relied heavily on Dunbar's testimony when rejecting Walker's petition for a writ of

2  *habeas corpus*. *See id*. at 29 ("Dunbar provided considerable testimony for use to the prosecution");

3  *id*. at 47-50 (listing twelve pieces of evidence that linked Walker to the crime, six of which expressly

4  flowed from Dunbar's testimony). Viewed in the most favorable light, plaintiffs' allegations suffice

5  to state a section 1983 claim against Danto.

## 2. Collateral Estoppel

7  Danto contends that collateral estoppel bars plaintiffs' new allegations about Dunbar's cross-

8  examination. The doctrine of collateral estoppel bars re-litigation of the same issue between the

9  same parties:

10  > Traditionally, we have applied the doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical
11  > to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in
12  > the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the
13  > same as, or in privity with, the party to the former proceeding

14  *Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990). According to Danto, "[d]uring the state

15  habeas proceeding, Walker asserted, just as he has here, that Danto conspired with the prosecutor to

16  hide the co-defendant's plea deal *and that she thereby became a second or "quasi" prosecutor*. Rep.

17  Supp. Mot. Dism. at 3:14-16 (emphasis in original). Thus, Danto asserts, plaintiffs' new allegations

18  "are merely restatements of the allegedly unfair consequences of the plea deal — i.e., it improperly

19  allowed prosecutors, vis-a-vis Danto's role, to elicit corroboration through witnesses like Sarah

20  Dunbar for Bowers's accomplice testimony." Mot. Dism. at 5:16-19.

21  This argument paints with too broad a brush. Plaintiffs' new allegation focuses not on the

22  plea deal, but on Dubar's testimony. In addition, unlike the FAC, which made no allegation against

23  Danto with respect to Dunbar's testimony, *see* FAC ¶ 40, the SAC alleges that Danto agreed to help

24  Dunbar perjure herself. *See* SAC ¶ 50 ("the conspiracy established at the beginning of trial between

25  ---

26  that they state a claim for a violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *People v. Ruthford*, 14 Cal. 3d 399, 407 (1975) for suppressing favorable character evidence. The court need
27  not decide this issue, because the knowing use of perjured testimony appears to be a distinct constitutional violation.

28

ORDER DENYING RANDY DANTO'S MOTION TO DISMISS AND GRANTING SANTA CLARA COUNTY'S MOTION TO DISMISS
No. C-04-02211 RMW
DOH                                          6

1  Danto and Schon . . . included an agreement that Danto would elicit testimony from Dunbar, which
2  Danto knew was perjured, that would be damaging to Walker").  The County cannot and does not
3  claim that any court has previously addressed *this* precise issue.  "If there is any doubt, collateral
4  estoppel will not apply."  *Flynn v. Gorton*, 207 Cal. App. 3d 1550, 1554 (1989).  The court thus
5  denies Danto's motion.

6  **C.    Claims Against the County**

7      The September 30 Order dismissed plaintiffs' claims against the county with leave to amend.
8  Plaintiffs did not amend any such allegations.  Accordingly, the court enters dismissal with prejudice
9  on these causes of action.

11                                      **III.  ORDER**

12      For the foregoing reasons, the court denies Danto's motion to dismiss and grants the
13  County's motion to dismiss with prejudice.  The court also dismisses with prejudice allegations
14  against Danto that (1) the September 30 Order dismissed without prejudice and (2) plaintiffs did not
15  amend.

18  DATED:    2/24/06                           /s/ Ronald M. Whyte
                                                RONALD M. WHYTE
19                                              United States District Judge

ORDER DENYING RANDY DANTO'S MOTION TO DISMISS AND GRANTING SANTA CLARA COUNTY'S MOTION TO DISMISS
No. C-04-02211 RMW
DOH                                             7

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

Matthew D. Davis           mdavis@walkuplawoffice.com
Erik T. Atkisson           eatkisson@reedsmith.com
Richard H. Schoenberger    rschoenberger@walkuplawoffice.com

**Counsel for Defendant(s):**

Aryn Paige Harris          aryn_harris@cco.co.scl.ca.us
Gregory J. Sebastinelli    gregory.sebastinelli@cco.co.scl.ca.us
My-Le Jacqueline Duong     Jacqueline.duong@cco.sccgov.org
Winifred Botha             winifred_botha@mail.cco.co.santa-clara.ca.us

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   ____2/24/06_____            _____DOH_____
                                            **Chambers of Judge Whyte**