**E-FILED on**   3/19/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| QUEDILLIS RICARDO WALKER, MYRTLE VIVIAN WALKER, and WILLIAM BERKELEY WALKER,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA, GERALD EGGE, GAIL LEWIS, EARL PENNINGTON, JOHN SCHON, RANDY DANTO, and DOES 1 to 100,<br><br>Defendants. | No. C-04-02211 RMW<br><br>ORDER GRANTING DEFENDANT DANTO'S MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 102, 103, 112]** |

Defendant Randy Danto ("Danto") moves for summary judgment on plaintiffs Quedillas Ricardo Walker's ("Walker"), Myrtle Vivian Walker's, and William Berkeley Walker's (collectively, "plaintiffs") 42 U.S.C. § 1983 claim that Danto conspired with the prosecution to suborn false testimony from a witness. Plaintiffs oppose defendant's motion. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court GRANTS Danto's motion for summary judgment.

## I. BACKGROUND

John Schon ("Schon") served as the Deputy District Attorney who prosecuted Walker for the January 10, 1991 murder of Lisa Hopewell ("Hopewell"). Rahsson Bowers was Walker's co-

1  defendant. Bowers's fingerprints were found on the duct tape at the murder scene, and Bowers had
2  also confessed. There was no physical evidence linking Walker to the crime scene. *Id.* Bowers told
3  sheriff deputies that he participated in the murder out of fear of Walker. Defendant Danto, a public
4  defender at the time, represented Bowers.

5        The parties do not dispute that prior to trial and continuing into trial, Danto vigorously tried
6  to get Schon to agree to a plea deal for her client, Bowers, in exchange for his testimony against
7  Walker. Shortly after trial commenced, Schon did agree that he would allow Bowers to plead to
8  second degree murder in exchange for his testimony. This agreement was kept secret until shortly
9  before Bowers testified at the end of the prosecution's case-in-chief.

10        Sarah Dunbar ("Dunbar") testified as a prosecution witness at the preliminary examination in
11  the state's case against Walker and Bowers and at the trial. She was interviewed by Schon and
12  sheriff deputy Gerald Egge on July 23, 1991. At the time she was awaiting sentencing on unrelated
13  drug charges. Dunbar did not have information about the murder, but was acquainted with both
14  Walker and Hopewell. She testified at the preliminary hearing on August 5, 1991 and on August 7,
15  1991. On August 9, 1991 her motion for release on her own recognizance was granted without
16  opposition from the district attorney's office. She also testified at the jury trial which ended on
17  December 10, 1991 in a finding that Walker was guilty of murder. The court sentenced him to a
18  term of 26 years to life.

19        On June 11, 2003 Walker filed a petition for writ of habeas corpus based upon newly
20  discovered evidence showing his factual innocence. On June 20, 2003 the Santa Clara County
21  Superior Court found Walker factually innocent, granted his petition and vacated his conviction.

22        At issue in this motion are plaintiffs' first and fourth claims directed against Danto for her
23  alleged violations of 42 U.S.C. §1983 by conspiring with district attorney Schon to elicit testimony
24  against Walker which Danto knew was perjured. Plaintiffs allege that Danto was able to present
25  false testimony from Dunbar that was significant to the state's case, but could not otherwise be
26  brought in by the state. This testimony came out during Danto's extensive cross-examination of
27  Dunbar concerning Walker's character, including his alleged bad temper, evil streak, and propensity
28  for violence.

Plaintiffs acknowledged at oral argument that they are not pursuing a claim against Danto based upon any allegation that in exchange for a favorable deal for her client, Bowers, she violated Walker's civil rights by conspiring with Schon to keep the deal she made on behalf of Bowers silent or by presenting testimony from Dunbar about Walker's character that the prosecution could not otherwise have offered. Plaintiffs are only pursuing the claim that Danto agreed to put on perjured testimony from Dunbar.

In January of 2005 Dunbar testified that she does not recall what was fact or fiction from her prior testimony, but that she was willing to do anything to get out of custody and had assumed Schon was helping her out.

## II.   ANALYSIS

The issue presented by defendant Danto's motion for summary judgment is "whether or not [Danto] violated [Walker's] constitutional right to due process by conspiring with the prosecutor during trial to suborn perjury from [Dunbar]."[1]

### A.   Summary Judgment Standard

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* In a motion for summary judgment, the court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[1] As noted in the Background section, the only issue raised by Danto's motion for summary judgment is whether Danto and Schon conspired to knowingly suborn Dunbar's false testimony at trial, not whether Walker's constitutional rights were violated by joint action between Schon and Danto for Danto to solicit character evidence against Walker that was significant for the state's case but could not otherwise be brought in by the state at trial.

**B.     Under Color of State Law**

Defendant Danto argues that summary judgment is warranted because there is no evidence that she acted under color of state law. Public defenders are deemed private actors for purposes of § 1983 claims. A § 1983 plaintiff must demonstrate that the private individual acted under color of state law. *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961). "'In the typical case raising a state-action issue, a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action. This may occur . . . sometimes if [the State] knowingly accepts the benefits derived from unconstitutional behavior.'" *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (quoting *Nat'l Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 192 (1988)).

A private individual's actions may amount to state action based on "joint action" with a state actor. *Id.* at 445. Under the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* (citation and internal quotation marks omitted). "A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id.* (citation and internal quotation marks omitted). To be liable as a co-conspirator, Danto "need not [have known] the exact details of the plan," but must "[have shared] the common objective of violating Walker's constitutional rights." *Id.* However, plaintiffs must demonstrate "a substantial degree of cooperation" in order to establish that Danto, as a private actor, engaged in state action. *Id.*

Plaintiffs argue that Danto and Schon conspired to violate Walker's constitutional rights by knowingly allowing Dunbar to testify falsely at trial. In support, plaintiffs point to: (1) Danto's testimony that she knew Bowers' testimony alone was insufficient to convict Walker under California law; (2) Danto's testimony that, prior to trial, she sent a written letter to Schon indicating that Bowers' testimony alone was insufficient to secure a conviction against Walker; (3) Danto's testimony that, shortly after trial commenced, she entered into a plea deal for a reduced sentence and charge for Bowers and kept it a secret for some time from Walker and the court; (4) Schon's testimony that, shortly after trial commenced, Schon entered into the secret plea deal for Bowers and

also kept it secret; and (5) Dunbar testified against Walker at trial and Danto solicited evidence of Walker's character from Dunbar. Plaintiffs argue that Dunbar's testimony was necessary to corroborate Bowers' testimony to support the state's case against Walker, but that Danto's cross-examination of Dunbar was legally and logically unnecessary for Bowers' defense since he already had a guaranteed plea deal.

The record is sufficient to establish a material issue of fact as to whether Danto acted under color of state law when she cross-examined Dunbar, if evidence exists from which it could reasonably be inferred that Danto knew she was presenting false testimony.

### C.     False Testimony

Plaintiffs allege that the evidence is sufficient to allow a reasonable inference that Schon and Danto conspired to violate Walker's constitutional rights by knowingly soliciting Dunbar's perjured testimony. Danto submits that no such inference can be drawn. Danto argues that Dunbar has not admitted she lied during her trial testimony. At most, Dunbar has no recollection whether she was telling the truth or not during her testimony because her recollection is impaired by her heavy abuse of drugs and alcohol. There is, however, some evidence that Dunbar's testimony at trial was in part, false. For example, Dunbar has admitted that her practice at the time was not necessarily to be truthful: "I don't remember if any of it was true." Harris Aff., Ex. G at 67:23.

Second, Danto submits that even assuming Dunbar committed perjury, there is no evidence that Danto knew the testimony was false. Here, plaintiffs must show that (1) the testimony (or evidence) was actually false, (2) Danto knew or should have known that the testimony was actually false, and (3) that the false testimony was material. *See United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). The evidence shows that the first time Danto ever met Dunbar was during Dunbar's testimony at the preliminary hearing on August 5, 1991. Although she typically personally interviews key witnesses like Dunbar, Danto does not recall that she interviewed Dunbar prior to trial. Further, although she usually has her own investigator speak with the witnesses, her investigator was unable to locate Dunbar so she relied only on the transcript of the July 23, 1991 interview of Dunbar conducted by Schon and sheriff deputy Gerald Egge and the preliminary hearing testimony. Danto denies that she knew whether Dunbar lied during her testimony or

otherwise had any agreement with Schon to testify falsely. Schon similarly denies that he told Dunbar to testify falsely or that he knew that she was providing false testimony. Finally, Danto points out that parts of Dunbar's testimony were factually consistent with evidence obtained by the police and prosecution through other sources.

In opposition, plaintiffs argue that (1) Schon arranged for Dunbar to be released on her own recognizance on her unrelated drug charges following her preliminary hearing testimony, (2) Dunbar was a drug addict desperate to be released from custody to get her next hit and easily manipulated, and (3) Schon essentially told Dunbar what to say in her testimony. However, even if these facts support an inference that Schon knew parts of Dunbar's testimony were a product of his purported manipulation of her during his pretrial interview of her, these facts do not support an inference that Danto knew any part of Dunbar's testimony was false. Although the evidence does show that Danto did not interview and investigate Dunbar as she usually would do of such a witness, the fact that Danto did not do so does not give rise to an inference that Danto knew that Dunbar was intending to or did give false testimony.

### III.  ORDER

For the foregoing reasons, the court GRANTS Danto's motion for summary judgment with respect to plaintiffs' claim that Danto conspired with the prosecution to suborn perjury which is the only claim plaintiffs are pursuing in this action.

DATED:     3/19/07                                         _/s/ Ronald M. Whyte_
                                                            RONALD M. WHYTE
                                                            United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Matthew D. Davis | mdavis@walkuplawoffice.com |
| Erik T. Atkisson | eatkisson@reedsmith.com |
| Richard H. Schoenberger | rschoenberger@walkuplawoffice.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Aryn Paige Harris | aryn_harris@cco.co.scl.ca.us |
| Gregory J. Sebastinelli | gregory.sebastinelli@cco.co.scl.ca.us |
| My-Le Jacqueline Duong | Jacqueline.duong@cco.sccgov.org |
| Winifred Botha | winifred_botha@mail.cco.co.santa-clara.ca.us |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   3/19/07                                        SPT
                                                     **Chambers of Judge Whyte**