E-FILED on     3/19/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| QUEDILLIS RICARDO WALKER, MYRTLE VIVIAN WALKER, and WILLIAM BERKELEY WALKER,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SANTA CLARA, GERALD EGGE, GAIL LEWIS, EARL PENNINGTON, JOHN SCHON, RANDY DANTO, and DOES 1 to 100,<br><br>Defendants. | No. C-04-02211 RMW<br><br>ORDER DENYING DEFENDANT JOHN SCHON'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION<br><br>**[Re Docket No. 97, 98, 113]** |

Defendant John Schon moves for summary judgment on plaintiffs Quedillas Ricardo Walker's ("Walker"), Myrtle Vivian Walker's, and William Berkeley Walker's (collectively, "plaintiffs") claims pursuant to 42 U.S.C. § 1983 and state law claims pertaining to Schon's prosecution of Walker. Plaintiffs oppose summary judgment of their § 1983 claims but do not oppose Schon's motion for summary judgment as to their state law claims. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court DENIES defendant Schon's motion for summary judgment as to the § 1983 claims. The state claims against Schon are DISMISSED.

ORDER DENYING DEFENDANT JOHN SCHON'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
SUMMARY ADJUDICATION—No. C-04-02211 RMW
SPT

# I.  BACKGROUND

## A.  Murder Conviction and Subsequent Vacation of Conviction

John Schon ("Schon") served as the Deputy District Attorney who prosecuted Walker for the January 10, 1991 murder of Lisa Hopewell ("Hopewell").  Rahsson Bowers was Walker's co-defendant.  Bowers's fingerprints were found on the duct tape at the murder scene, and Bowers had also confessed.  There was no physical evidence linking Walker to the crime scene.  *Id.*  Bowers told sheriff deputies that he participated in the murder out of fear of Walker.  Defendant Danto, a public defender at the time, represented Bowers.  The preliminary hearing in Walker's case commenced July 31, 1991 and continued into the early part of August 1991.  Sarah Dunbar ("Dunbar") served as a witness at the preliminary hearing.  On August 26, 1991 the district attorney's office filed an information charging Walker with murder and use of a deadly and dangerous weapon in the commission and attempted commission of murder.  Trial commenced on October 28, 1991.  Dunbar also testified at trial.

On December 10, 1991 a jury found Walker guilty of murder.  The court sentenced him to a term of 26 years to life.  On June 11, 2003 Walker filed a petition for writ of habeas corpus based upon newly discovered evidence.  On June 20, 2003 the state court found Walker factually innocent of the charges, vacated his conviction, and granted his petition for writ of habeas corpus.

## B.  Dunbar Interview

On July 19, 1991 Sergeant Earl Pennington ("Pennington") interviewed Dunbar.  That same day Pennington obtained and served a subpoena ordering Dunbar to appear as a witness in the preliminary hearing of the state's case against Walker and Bowers.  On July 23, 1991 Schon and Santa Clara County deputy sheriff Gerald Egge ("Egge") interviewed Dunbar.  Dunbar was in custody at Elmwood Facility on unrelated drug charges.  At the time she was awaiting sentencing.  Dunbar did not have information about the murder, but was acquainted with both Walker and Hopewell.  She testified at the preliminary hearing on August 5, 1991 and on August 7, 1991.  On August 9, 1991 her motion for release on her own recognizance was granted without opposition.  She  testified at the Bowers and Walker trial.  After the trial, she testified that she did not recall what was fact or fiction from her prior testimony, but that she was willing at the time to do anything to get

out of custody and had assumed Schon was helping her out.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* In a motion for summary judgment, the court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Prosecutorial Immunity

Plaintiffs acknowledged at oral argument that they are pursuing a claim against Schon only on the theory that he conspired with Danto to put on perjured testimony from Dunbar. Schon's motion is based on the contention that he is absolutely immune from liability.[1] The question is whether Schon, in his July 23, 1991 interview of Dunbar, was acting in the traditional function of an advocate. "A prosecutor is protected by absolute immunity from liability for damages under § 1983 'when performing the traditional functions of an advocate.'" *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005) (citing *Kalina v. Fletcher*, 522 U.S. 118, 131 (1997)). "Prosecutorial immunity depends on 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (citing *Kalina*, 522 U.S. at 127). When a prosecutor performs "police-type investigative work" he is only entitled to qualified immunity. *Id.*

Here, Schon claims that his July 23, 1991 interview of Dunbar constitutes advocacy activity subject to absolute immunity. Protected "advocacy" actions are those activities "intimately associated with the judicial phase of the criminal process." *Id.* at 637 (citing *Imbler v. Pachtman*,

---

[1] Schon acknowledged at the hearing on the motion that he was not raising the argument in his motion that there is no evidence to support the contention that he encouraged Dunbar to testify falsely.

424 U.S. 409, 430 (1976)) (internal quotation marks omitted).  For example, it has been held that a prosecutor enjoys absolute immunity from allegations of malicious prosecution, use of perjured testimony at trial, suppression of material evidence at trial, and direct participation at a probable cause hearing.  *See id.* at 637 (citations omitted).  As the official seeking the protections of absolute immunity, Schon bears the burden of demonstrating that he was performing the functions of an advocate in interviewing Dunbar.  *Id.* at 636.

While the Supreme Court has not set forth any bright-line test distinguishing advocacy functions from police-type investigative work, its cases provide guidance in evaluating the functions at issue.  *See id.* at 637-38.  First, a prosecutor is not an advocate prior to there being probable cause to arrest anyone.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 (1993).  At the same time, "a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards."  *Id.* at 274 n.5.  Finally, a prosecutor's evaluation of evidence and interview of witnesses in preparation for trial is considered advocacy even though he is engaged in some level of investigation when doing so.  *Genzler*, 410 F.3d at 638.  As the *Genzler* court put it, "[t]he question is whether a prosecutor's investigation is of the type normally done by the police . . . or whether an investigation is bound up with the judicial process."  *Id.*

In *Genzler*, a deputy district attorney and an investigator interviewed a witness prior to the preliminary hearing and during the initial investigation of the incident.  *Id.*  They allegedly coerced the witness to lie.  The Ninth Circuit upheld the district court's finding that the interview constituted police-type investigative activity and, therefore, only qualified immunity applied.  *Id.* at 642.  The court noted two important factors to consider.  First, the timing of evidence gathering is a relevant factor, but is not dispositive.  *Id.* at 639-40.  For example, a prosecutor is absolutely immune from coaching a witness during a break in trial, but is not immune from directing the police to coerce a confession from a suspect soon after the suspect's arrest.  *Id.* at 639.  Second, the court considers the character and nature of the functions performed.  A prosecutor is more likely performing an advocacy role when he is "evaluating evidence and interviewing witnesses as he prepares for trial" or "organizing, evaluating, and marshaling that evidence in preparation for a pending trial."  *Id.* at 639 (citations, internal quotation marks, and internal edits omitted).  By contrast, when the

ORDER DENYING DEFENDANT JOHN SCHON'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION—No. C-04-02211 RMW
SPT                                                                 4

prosecutor is searching for clues or corroboration or seeking to acquire evidence which might be used in a prosecution, his conduct constitutes police-type investigative work. *Id.* (citations omitted).

In considering whether the deputy district attorney and investigator's joint interview of a witness was absolutely immune, the court considered both the timing and the nature of the interview. The court noted that although the criminal complaint had been filed at the time of the interview, it did not conclusively result in absolute immunity for all of the prosecutor's subsequent conduct. *Id.* at 641. In particular, the court found that the timing of the interview did not weigh much in favor of absolute immunity because the preliminary hearing was still more than three weeks away and officials were still investigating facts to support probable cause for the suspect to stand trial and to determine the precise charges for trial. *Id.* at 641-42.

Turning to the nature of the interview, the court noted that conduct entitled to the protections of absolute immunity "must include *the professional evaluation of evidence assembled by the police and appropriate preparation for its presentation at trial* or before the grand jury after a decision to seek an indictment has been made." *Id.* at 642 (quoting *Buckley*, 509 U.S. at 273) (emphasis in original). The court noted that the only notes from the witness interview were made by the investigator and "record only a narrative of what Flanders reportedly said at the meeting about the events." *Id.* The court found these notes to show that the prosecutor and the investigator were in the process of gathering information from the witness. While a prosecutor would be absolutely immune where the interview constitutes a meeting to tell the witness how he should testify, the interview at issue involved the police-like gathering of evidence. *Id.* Thus, although the court acknowledged that there were some evidence in the record that the prosecutor and investigator were reviewing and evaluating evidence in preparation for the preliminary hearing and trial testimony, the whole and context of the record supported the conclusion that they were engaged in police-type investigative work. *Id.*

**1.     Timing**

Here, Schon argues that because the Dunbar interview was merely one week prior to the preliminary examination, the timing of the interview weighs heavily in favor of absolute immunity. Schon argues that he was preparing Dunbar to testify for the preliminary examination. It is

undisputed that Schon and Egge interviewed Dunbar on July 23, 1991, just one week prior to the commencement of the preliminary hearing on July 31, 1991. However, as noted in *Genzler*, this timing is not dispositive. First, although Schon argues that there was already probable cause to charge Walker and that the police's investigation was closed, it appears that there was only probable cause for the arrest and the filing of a criminal complaint. The purpose of the preliminary hearing was to determine whether there was probable cause to hold Walker over for trial and the precise charges for which Walker would stand trial. That hearing had not yet occurred and was still a week away. The preliminary examination concluded on August 15, 1991 and the information charging Walker was filed August 26, 1991.

Second, the timing, when viewed in context and in the light most favorable to plaintiffs, supports a conclusion that the intent of the interview was to gather information rather than evaluate, organize, or assemble information already gathered by the police. Schon first heard of Dunbar as a potential witness from Egge right before the July 23, 1991 interview. Egge informed Schon that Sergeant Pennington had spoken with Dunbar on July 19, 1991, that Dunbar remembers giving Walker some gloves, that she had had a relationship with Walker, and that she had information about Walker's relationship with Hopewell. With such limited and vague information, it is unlikely that Schon had already decided Dunbar would testify at the preliminary hearing. Rather, the purpose of the interview appeared to be at least in part to gather more information and to determine whether Dunbar would be a witness. As Schon testified, he had not seen any police report or notes from Pennington's July 19, 1991 interview of Dunbar, and had not even spoken with Pennington. Pennington's interview appears to be the police's first contact with Dunbar in relation to the Hopewell murder; thus, regardless of Schon's argument that the investigation of the case had closed, the investigation, at least interpreting the facts in the most favorable light to plaintiffs, appears to have been open or ongoing with respect to any information Dunbar might have to support the state's case.

Schon's own characterization of the interview in his deposition appears to suggest that he would have had the detectives conduct the interview had he not been pressed for time. According to Schon, "[w]e didn't investigate homicides. Sometimes we would send an investigator out if a

1 witness came up during trial. . . . Normally, the cases were pretty well wrapped up, but during the
2 course of the trial, new names might come up and you may need 'em interviewed." Aff. David Rollo
3 Supp. Schon's Reply ("Rollo Aff."), Ex. B (4/24/06 Schon Depo.) at 26:9-15.  However, in this case,
4 Schon performed the interview of a "new" potential witness himself:  "So we were under the gun
5 and I didn't have time to have him and/or Pennington go interview her.  They can do that and do a
6 tape transcript.  I had a week.  So I went, and we went up there to talk to her."  Rollo Decl., Ex. B
7 (4/24/06 Schon Depo.)  at 66:2-6.

Finally, it appears that the prosecution ultimately relied only upon the July 23, 1991 Dunbar interview.  Schon testified that he never even saw the notes prepared by Pennington from his interview with Dunbar until after Walker's trial had concluded.  The bits of information conveyed by Egge from Pennington's interview appeared to serve more as a "tip" which Schon and Egge further investigated by conducting a detailed, recorded interview of Dunbar.  The information gathered from this interview became the basis of evidence offered by the prosecution at trial through Dunbar's testimony.  Therefore, viewed in context and in the light most favorable to plaintiffs, a reasonable juror could find Schon and Egge's July 23, 1991 interview of Dunbar to be investigative police-type work.[2]

**2.     Nature of Interview**

Although Schon argues that the purpose of the Dunbar interview was essentially to fill out what he had learned from Pennington (via Egge), to see whether he felt Dunbar was being truthful, and to develop a relationship with her so she would be forthcoming, the transcript of the interview does not necessarily support such a limited purpose.  Here, Schon invited Dunbar to provide a narrative of the background of various persons possibly related to Hopewell or Walker.  In addition, although the information from Pennington had not revealed any specific information about Walker's relationship with either Hopewell or Dunbar, Schon searched for information about whether Walker

---

[2] Although *Genzler* makes clear that immunity is a question of law, it also treats the underlying question of whether a prosecutor is engaged in advocacy intimately associated with the judicial process as a factual one.  *Genzler*, 410 F.3d at 633 ("Evaluating the timing and nature of their conduct, we conclude that there is a genuine issue of material fact about whether they were engaged in advocacy intimately associated with the judicial process when they interviewed a key witness, Sky Blue Flanders.").

1  had a mean streak, the types of things he would do, and his reputation. In other words, he appeared
2  to be searching for clues rather than evaluating information already gathered by the police.

3  According to Egge, he did not know much about Dunbar, Walker, and Hopewell's
4  relationship until after the interview with Dunbar. Egge basically considered the Dunbar interview
5  "a continuation of the investigation into the murder" and for the purpose of generating facts. Rollo
6  Aff., Ex. A (11/17/06 Egge Depo.) at 101:7-19; 102:2-23. Schon and Egge inquired about violence
7  exhibited by Walker, including whether he always carried a knife. They inquired of Walker's
8  relationship with Bowers, and of Walker's reaction to the news of Hopewell's death. They tried to
9  obtain information about whether Dunbar had ever heard of Walker "doing hits" or "being a hit
10 man" before and even suggested that they had gotten some information to that effect previously. On
11 the whole, Schon and Egge's interview of Dunbar appeared calculated to search for clues or
12 corroboration or to acquire evidence which might be used in prosecuting the case rather than to
13 evaluate evidence assembled by the police or to prepare for the presentation of evidence at trial.

14 Schon argues that he did not seek by the interview to "more thoroughly investigate the
15 already solved murder." However, in a declaration opposing Walker's petition for writ of habeas
16 corpus before the Sixth District Court of Appeal Schon had admitted that (1) there was a general
17 pattern of non-cooperation [from witnesses] because of an attitude of distrust of law enforcement,
18 fear of being labeled a 'snitch' and, an overriding fear of [Walker]"; (2) upon subsequent interviews,
19 "[he was] able to uncover additional information not initially revealed"; (3) "during questioning at
20 the Preliminary Examination, [he] uncovered even more new details"; and (4) "[a]s trial commenced
21 [his] approach contemplated that the witnesses may finally cooperate with the prosecution" . . . but if
22 they did not come clean he would be forced to plea bargain with Bowers if other evidence against
23 Walker did not develop. Schon's RJN, Ex. J (Decl. of John Schon Opp'n Walker's Petition for Writ
24 of Habeas Corpus) at 2:3-26. Schon further states that it was clear to counsel for Walker and
25 counsel for Bowers that unless Schon was able to obtain additional evidence from witnesses, he
26 would need Bowers' testimony or not survive a Penal Code Section 1118.1 motion by Walker.
27 Thus, the record reveals that even after the preliminary hearing and, perhaps even into trial, Schon
28 needed additional evidence against Walker. Because the timing and nature of the July 23, 1991

ORDER DENYING DEFENDANT JOHN SCHON'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE
SUMMARY ADJUDICATION—No. C-04-02211 RMW
SPT                                                          8

interview could reasonably support a conclusion that Schon's conduct constituted police-type investigative work rather than advocacy, the court concludes that Schon is not entitled to summary judgment that he is absolutely immune for his participation in the July 23, 1991 Dunbar interview.

### III. ORDER

For the foregoing reasons, the court DENIES defendant Schon's motion for summary judgment on plaintiffs' § 1983 claims. The state claims against Schon are dismissed.

DATED: 3/19/07

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff(s):**

| | |
|---|---|
| Matthew D. Davis | mdavis@walkuplawoffice.com |
| Erik T. Atkisson | eatkisson@reedsmith.com |
| Richard H. Schoenberger | rschoenberger@walkuplawoffice.com |

**Counsel for Defendant(s):**

| | |
|---|---|
| Aryn Paige Harris | aryn_harris@cco.co.scl.ca.us |
| Gregory J. Sebastinelli | gregory.sebastinelli@cco.co.scl.ca.us |
| My-Le Jacqueline Duong | Jacqueline.duong@cco.sccgov.org |
| Winifred Botha | winifred_botha@mail.cco.co.santa-clara.ca.us |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   3/19/07                         SPT
                                 **Chambers of Judge Whyte**

ORDER DENYING DEFENDANT JOHN SCHON'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION—No. C-04-02211 RMW
SPT                                   10